Clyde McCULLOUGH and Glenda McCullough, Appellants,

v.

AMSTAR CORPORATION, Appellee.

No. 07–91–0311–CV.

Court of Appeals of Texas, Amarillo.

June 26, 1992.

Leebron & Robinson, W. Michael Leebron, II, Houston, for appellants.

Underwood, Wilson, Berry, Stein & Johnson, Amarillo, James A. Besselman and Kevin P. Parker, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

BOYD, Justice.

Appellants Clyde and Glenda McCullough bring this appeal from a take-nothing summary judgment in favor of appellee Amstar Corporation. In one point, they assert the trial court erred in granting its judgment because genuine issues of material fact existed concerning the foreseeability of harm to Clyde as elements of both duty and proximate cause which appellee failed to disprove. We affirm the judgment of the trial court.

On November 1, 1983, Clyde was on the premises of appellee loading a product known as "steepwater" into a tank trailer.

At that time, appellee was engaged in the business of processing raw corn into numerous by-products by using heat and various catalysts. After all other by-products are removed, the last remaining one is a stew called steepwater. Steepwater is stored in tanks on appellee's premises until it can be transported to feedlots where it is dried solid, cut into pieces, and fed to livestock.

Appellants alleged that Clyde inhaled toxic fumes from the steepwater which caused an acute allergic pneumonitis with possible heart involvement. The ensuing chain of events, they aver, led to cardiomyopathy or weakening of the heart muscle. That condition was followed eventually by congestive heart failure which led to a heart transplant.

Appellants alleged that appellee was negligent in failing to use due care in the manufacture of its product, to specify safe and proper loading and handling procedures, to inspect its product for defects and hazardous conditions, to give Clyde and others similarly situated warning as to the hazardous conditions created by the loading of "steepwater," and to provide Clyde with a safe place to work. Thus, it is readily apparent that appellants assert a negligence cause of action.

In its motion for summary judgment, appellee asserted that Clyde's injuries were not reasonably foreseeable as a matter of law and that appellee, therefore, did not owe a duty to warn or guard against those injuries. As a corollary to that assertion, appellee also argued the absence of foreseeability negated the existence of proximate cause.

In support of its motion, appellee tendered affidavits of Eddie Adams and Paul Blanchard. Adams stated that he had been employed in the corn wet milling industry for approximately 18 years at the time of his affidavit. He stated that steepwater had been produced at the Dimmitt facility for ten years at the time of the alleged injury using the same production methods and there had never been a documented incident of a person being injured by exposure to the fumes from steepwater in that facility. He also averred that appellee had loaded, stored and transported steepwater in the same manner during those ten years and those procedures met or exceeded all industry standards. In addition, steepwater virtually identical to that which allegedly injured Clyde had been handled in the same manner for approximately twelve years prior to the alleged injury and during the period prior to the occurrence in question appellee had regularly tested the product to ensure it complied with OSHA standards. Based upon his knowledge of the industry and its history, Adams concluded "the cause of the injuries are absolutely unique in the history of the industry."

In addition to confirming the history of the product production at Dimmitt, Blanchard swore that other corn wet milling industrial producers had used virtually identical production methods to produce steepwater for over 100 years at the time of Clyde's alleged injuries. He concluded that to his knowledge, there had never been a documented incident of a person being injured by exposure to steepwater fumes in the United States or the United Kingdom.

Appellee also attached to its motion excerpts from the cross-examination of Dr. Jay B. Jensen who was one of Clyde's treating physicians. In that excerpt, Jensen testified that Clyde's claim was the first time he had ever heard that inhalation or smelling of steepwater could result in the necessity of a heart transplant. He also stated that since his contact with Clyde, he had never published any papers or warnings to patients or physicians of such a possibility. Jensen also gave a negative response when queried whether he would expect "the kind of exposure to sulphur dioxide that is now out in the Panhandle Sky" to result in some kind of toxic inflammation of the heart muscle. Appellee also attached excerpts from the cross-examination of Dr. Carl Smith, who was another treating physician. In that cross-examination, Smith testified that he had never heard of any other instance where the breathing of steepwater fumes could cause the necessity for a heart transplant. He also said that the correlation between

the breathing of the fumes and the heart transplant would be "a very rare thing in medicine."

Examination of the deposition excerpt also reveals this dialogue between Smith and appellee's counsel:

Q: (By Mr. Besselman) I want you to go back in time to when you were treating Mr. McCullough in October of 1983, before he made his first visit to the Amstar Plant.

A: Yes.

Q: Would you at that time have advised him, during the course of telling him that he wasn't going to live very long if he didn't lose weight and get his blood pressure down, would you have advised him at that time that he also better not breathe any steep water fumes?

A: I would not have advised of that.

Q: Because that was simply medically unforeseeable to you at that time?

A: That's correct.

In their response to the motion, appellants attached an excerpt from Smith's deposition cross-examination in which he stated that he had not treated anyone else who had been in contact with steepwater. They also attached portions of the deposition of Wayland Rippstein, a chemist and toxicologist. In that excerpt, Rippstein stated that he had examined a response to interrogatories which listed some 23 chemical ingredients for steepwater. Parenthetically, that interrogatory response is not in this record.

Without specifying what ingredients he saw listed in the response, Rippstein stated that a number of them can cause problems. He specifically referred to cobalt and said that "cobalt can be a problem in cardiac difficulties and that is short term exposures to these kind of compounds." He also referred to sulphur dioxide, and commented that "[T]his compound in conjunction with magnesium, say in the form of dust or an aerosol being inhaled can also produce problems as far as production of inhalation problems, and these problems can really then lead to the sulphur dioxide, can lead to a problem dealing with cardiac problems."

Appellants also attached to their response a report of Dr. Edward K. Massin in which he said he had reviewed the depositions of Jensen, Smith, and Rippstein. In his report he referred that the fact Clyde admittedly had other factors predisposing to heart failure, "specifically severe obesity and hypertension." However, he concluded:

his clinical course of rapid deterioration following exposure to steepwater suggests that that compound was either causative in the onset of his cardiomyopathy or that it was a significant factor aggravating his rapid clinical deterioration. While there are few absolutes in clinical medicine, it seems very likely that Mr. McCullough's exposure to steepwater resulted in his developing a cardiomyopathy and congestive heart failure, which ultimately led to his requiring a heart transplantation.

The thrust of appellants' attack upon the summary judgment is that appellee's testimony as to lack of knowledge of injuries which may have arisen from inhaling the steepwater fumes is not conclusive as to foreseeability when there was extensive knowledge available concerning harm from the chemicals contained therein. They postulate that appellee "certainly knew or should have known of the harmful effects of the chemicals it placed into its products regardless of its esoteric name."

The litany of standards by which the validity of a summary judgment is measured are now axiomatic. The summary judgment procedure is designed to eliminate unmeritorious claims and untenable defenses when there is no genuine issue of material fact. *Webb v. Eledge*, 678 S.W.2d 259, 261 (Tex.App.—Amarillo 1984, no writ). Thus, a summary judgment movant has the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Acker v. Texas Water Com'n*, 790 S.W.2d 299, 301–02 (Tex.1990). In deciding whether there is a disputed material fact issue, evidence favorable to the non-movant will be taken as true. Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in

its favor. *Id.* at 302. A defending party is entitled to prevail on a motion for summary judgment if the party establishes, as a matter of law, that no genuine issue of material fact exists with respect to one or more essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corporation,* 450 S.W.2d 827, 828 (Tex.1970); *Federated Dept. Stores v. Houston Lighting,* 646 S.W.2d 509, 511 (Tex.App.—Houston [1st Dist.] 1982, no writ).

■ The common law doctrine of negligence requires three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from that breach. Because a plaintiff must establish both the existence and the violation of a duty owed to the plaintiff to show liability in tort, the threshold inquiry in a negligence case must be duty, the determination of which is a question of law for the court to decide from the facts surrounding the occurrence in question. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987).

In *El Chico,* the Court, quoting *Buchanan v. Rose,* 138 Tex. 390, 159 S.W.2d 109, 110 (1942), explicated when a "duty" arises in the following language:

> ... if a party negligently creates a situation, then it becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby.

*Id.* at 311.

■ In making its determination whether a duty exists, a court must consider several interrelated factors, including the risk, foreseeability, and likelihood of injury. Of these factors, foreseeability of the risk is the foremost and dominant consideration. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). The test of foreseeability is "what one should under the circumstances reasonably anticipate as consequences of his conduct." *City of Dallas v. Maxwell,* 248 S.W. 667, 670 (Tex. Comm'n App.1923, holding approved).

■ The summary judgment evidence sufficiently established that Clyde was the first person who suffered an injury as a result of exposure to steepwater fumes at the Dimmitt facility. Indeed, appellee's evidence was that the same corn wet milling process had been in use in that industry for more than 100 years. Its evidence that there had been no other documented claim for injuries to any person as a result of inhaling steepwater fumes in either the United States or the United Kingdom was also uncontroverted. The medical testimony was that neither Jensen nor Smith had heard of a similar claim for injuries from inhaling fumes from the steepwater, and, Smith testified that such a connection was medically unforeseeable to him prior to the incident in question. While Massin in his report suggested the likelihood that Clyde's exposure to steepwater was an aggravating factor in his deterioration, he made no suggestion that an injury was medically foreseeable from such exposure.

However, as we noted above, appellants' primary contention is that whether the doctors, or anyone else, had heard of steepwater or injuries from inhalation of that substance is not conclusive. Rather, he says, the manufacturer certainly knew or should have known of the harmful effects of the chemicals it placed into its product "regardless of its esoteric name."

In this regard, the testimony of the toxicologist was that he had seen a list of 23 compounds as chemical ingredients of steepwater. That list is not included in the record. Although he said a number of them "could" cause trouble, he specifically mentioned only two. Of those, he opined that cobalt "can be a problem in cardiac difficulties and that is short term exposures." His opinion that cobalt "can" be a problem in cardiac difficulties was without specificity as to the amount of cobalt required to cause difficulties, or the circumstances under which it "can," in reasonable probability, cause such difficulties.

Rippstein's only other specific reference was to sulphur dioxide. His comment, that that substance in conjunction with magnesium, "can also produce problems" we have

quoted above. He does not say that magnesium was listed as one of the chemical ingredients of steepwater. Again, that reference, without testimony as to the presence of magnesium, and without more specificity as to the amounts, combinations, or transmigrations of sulphur dioxide that would, in reasonable probability, lead to cardiac problems amounts to mere speculation or surmise. *Cf. Schaefer v. Texas Emp. Ins. Ass'n*, 612 S.W.2d 199, 203–04 (Tex.1980) (in absence of reasonable probability, inference of causation amounts to no more than conjecture or speculation). While Rippstein refers to information found in literature that describes "this sort of thing," the summary judgment evidence does not contain any specific reference to, or description of, the literature to which he refers.

In summary, under this record, the evidence was sufficient to establish that appellee could not reasonably foresee that Clyde was at risk in loading the steepwater in the manner in which it was done. That being true, appellee did not violate any duty it owed to Clyde in any of the manners alleged. Appellants' point of error is overruled and the judgment of the trial court affirmed.