Sheri FOSTER, Appellant,

v.

DENTON INDEPENDENT SCHOOL DISTRICT and Honeywell, Inc. Control Systems Contracting Consulting, L.L.C., d/b/a Honeywell Control Systems Contracting Consulting, L.L.C., Appellees.

No. 2–01–139–CV.

Court of Appeals of Texas, Fort Worth.

March 28, 2002.

Clark & Assoc., Steven E. Clark, Dallas, for Appellant.

Walsh, Anderson, Brown, Schulze & Aldridge, P.C. JoAnn S. Wright, Eric W. Schulze, Irving, Flynn & Gaskins, L.L.P. & Steve Gaskins, Karen Reierson, Minneapolis, MN, Hughes & Luce, L.L.P., David M. Ellis, Dallas, for Appellee.

PANEL A: CAYCE, C.J., DAY and DAUPHINOT, JJ.

## OPINION

SAM J. DAY, Justice.

## I. INTRODUCTION

This is an appeal from summary judgment entered in favor of Appellees Denton Independent School District (Denton) and Honeywell, Inc. and Control Systems Contracting and Consulting, LLC, d/b/a Honeywell Control Systems Contracting and Consulting, L.L.C. (Honeywell). Appellant Sheri Foster sued Denton and Honeywell for medical conditions she alleged resulted from the spread of mold and fungal spores throughout her classroom by the HVAC system Honeywell installed. On appeal, Foster raises two issues challenging the trial court's order granting final summary judgment. We affirm.

## II. BACKGROUND

In 1990, Foster began working as an elementary school teacher at Wilson Elementary School in the Denton Independent School District. A year later, Honeywell installed an HVAC system in the school and was required by contract to maintain and monitor the system, as well as change the filters four times a year.

During her tenure at Wilson Elementary, Foster began experiencing recurrent headaches, sinus and nasal congestion, and respiratory problems. Foster and other employees of the school requested the administration to investigate the indoor air quality of the school, which they suspected was causing their health problems. Eventually, Foster began seeing green dust accumulate on the walls of her classroom, which was later determined to be caused by mold and fungal colonies, apparently growing in standing water under Foster's classroom that spread into the school environment through the HVAC system. After continued health problems, Foster contacted a physician who advised her that the school environment may have been causing her health condition and told her to obtain samples of the green dust in her classroom. The dust was tested and was determined to contain aeroallergens and opportunistic pathogens harmful to humans.

On January 20, 1998, Foster told the school administration that her doctor had advised her not to return to the school building until the mold had been remedied. Foster took her remaining sick leave and then requested temporary disability leave. Denton, however, filed a workers' compensation employer's report of injury listing the date of the injury as January 20, 1998. Foster consequently processed her termination and obtained her teacher retirement.

Foster sued Denton and Honeywell for intentional nuisance and intentional pollution. Foster also sued Denton under article 5182a of the Texas Revised Civil Statutes and Section 502.017 of the Texas Health and Safety Code, which requires employers to provide safe work environments, notify employees of any possible exposure to hazardous chemicals, and prohibits employers from discharging or disciplining employees for filing a complaint, assisting an inspector, or exercising their rights under chapter 502 of the health and safety code. Act of May 10, 1967, 60th Leg., R.S., ch. 201, § 3, 1967 Tex. Gen. Laws 441, 442 (amended 1985), *repealed and recodified by* Act of April 25, 1995, 74th Leg., R.S., ch. 76, § 9.54(a), (c), 1995 Tex. Gen Laws 458, 656–57 (current version at Tex. Lab.Code Ann. § 411.103 (Vernon 1996)); Tex. Health & Safety Code Ann. § 502.017 (Vernon Supp.2002). Foster additionally sued Honeywell for negli-

gence in failing to properly maintain and operate the HVAC system. The trial court granted summary judgment in favor of Denton and Honeywell. This appeal followed.

## III. DENTON'S SUMMARY JUDGMENT

Denton asserted in its motion for summary judgment that: (1) it retained sovereign immunity from Foster's intentional pollution and intentional nuisance tort claims pursuant to section 101.051 of the Texas Tort Claims Act; (2) Foster was not entitled to maintain her suit for intentional tort arising from a violation of chapter 411 of the labor code because section 411.004 provides that chapter 411 does not create an independent cause of action at law or in equity; and (3) Foster did not plead any set of facts showing that Denton violated Section 502.017 of the Texas Health and Safety Code.

In her first issue, Foster argues that the trial court erred in granting Denton's motion for summary judgment. Specifically, Foster contends that: (1) Denton failed to establish its affirmative defense of sovereign immunity as a matter of law; (2) Denton improperly asserted that chapter 411 of the labor code did not apply to it when chapter 411's predecessor statute, article 5182a of the civil statutes, which she argues is applicable to this case, imposed a nondelegable duty to warn its employees of hazardous conditions at their workplace; and (3) she pled a cognizable violation of the Texas Hazards Communications Act. *See* Act of May 10, 1967, 60th Leg., R.S., ch. 201, § 3, 1967 Tex. Gen. Laws 441, 442 (amended 1985), *repealed and recodified by* Act of April 25, 1995, 74th Leg., R.S., ch. 76, § 9.54(a), (c), 1995 Tex. Gen Laws 458, 656–57 (current version at TEX. LAB.CODE ANN. § 411.103 (Ver-

non 1996)); TEX. HEALTH & SAFETY CODE ANN. § 502.017

### A. STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999); *Friendswood Dev. Co. v. McDade + Co.,* 926 S.W.2d 280, 282 (Tex.1996); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.,* 391 S.W.2d at 47. Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Id.* The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin,* 589 S.W.2d at 678.

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Elliott–Williams Co. v. Diaz,* 9 S.W.3d 801, 803 (Tex.1999). To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is

presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995).

### B. SOVEREIGN IMMUNITY

■ Denton asserted in its motion for summary judgment that it was immune from Foster's tort causes of action under the doctrine of sovereign immunity. A defendant is entitled to summary judgment on an affirmative defense, such as sovereign immunity, if the defendant conclusively proves all the elements of the affirmative defense. *KPMG Peat Marwick,* 988 S.W.2d at 748. To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex. 1996).

■ The doctrine of sovereign immunity, unless waived, protects the State of Texas, its agencies, and its officials from lawsuits for damages, absent the State's consent to be sued. *Umar v. Scott,* 991 S.W.2d 512, 518 (Tex.App.-Fort Worth 1999, no pet.). The supreme court has expressly stated that an "independent school district is an agency of the state." *Barr v. Bernhard,* 562 S.W.2d 844, 846 (Tex.1978); *see also San Antonio Indep. Sch. Dist. v. McKinney,* 936 S.W.2d 279, 285 (Tex.1996)(Spector, J., concurring). The Legislature has also labeled school districts as Texas state governmental units for purposes of the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(B) (Vernon Supp.2002). Through the Texas Tort Claims Act, the Legislature has waived governmental immunity in certain circumstances. *Id.*

§ 101.025 (Vernon 1997). In fact, it provides Texas school districts a greater level of immunity than any other "state entity." *Id.* § 101.051; *see also McKinney,* 936 S.W.2d at 286 (Gonzalez, J., dissenting). Under the Texas Tort Claims Act, a Texas school district is only liable for injuries arising from the operation or use of a motor vehicle. TEX. CIV. PRAC. & REM.CODE ANN. § 101.051.

While Foster acknowledges that the Texas Tort Claims Act provides a limited waiver of governmental units' common law immunity, she argues that it is not the sole means by which a governmental unit's sovereign immunity may be waived. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.003. Foster specifically contends that sovereign immunity may also be waived through: (1) other statutes providing a legal remedy against governmental units; or (2) legal remedies recognized at common law against a governmental unit. Foster claims she pled her causes of action not under the Texas Tort Claims Act, but rather under these exceptions to sovereign immunity. Specifically, Foster contends that because intentional nuisance and intentional pollution were actions applicable to governmental units at common law, they are exceptions to sovereign immunity. *See City of Saginaw v. Carter,* 996 S.W.2d 1, 3 (Tex.App.-Fort Worth 1999, pet. dism'd w.o.j.); *Golden Harvest Co., Inc. v. City of Dallas,* 942 S.W.2d 682, 689–90 (Tex.App.-Tyler 1997, writ denied); *Stein v. Highland Park Indep. Sch. Dist.,* 540 S.W.2d 551, 553 (Tex.Civ.App.-Texarkana 1976, writ ref'd n.r.e.).

In *Golden Harvest Co.,* property owners sued the City of Dallas for damages resulting from common law nuisance and violation of the intentional takings clause of Article I, Section 17 of the Texas Constitution after floods caused by the release of a larger-than-normal amount of water from

Lake Ray Hubbard damaged their property. *Golden Harvest Co.,* 942 S.W.2d at 684. In concluding that the trial court erred in granting the city's motion for summary judgment under the doctrine of sovereign immunity, the court held that "Golden Harvest can state its claim of nuisance and interrelate it with a taking under Art. I, sec. 17 of the TEXAS CONSTITUTION. Once a litigant has alleged such a nuisance, the Texas Supreme Court recognizes an exception to the doctrine of governmental immunity." *Id.* at 690 (citations omitted).

In *City of Saginaw,* property owners sued the city along with five other defendants for intentional invasion and interference with their access to and use and enjoyment of their property and nuisance. *City of Saginaw,* 996 S.W.2d at 2. The property owners' cause of action arose out of the city's actions that resulted in an increase in volume and velocity of water rushing over their property causing erosion and the destruction of trees and a road. *Id.* Relying on the Tyler Court of Appeals' decision in *Golden Harvest Co.,* we determined that cities are not immune from actions brought under the takings clause of the Texas Constitution or from claims for nuisance caused by the city's non-negligent acts because nuisance is an alternative ground of recovery under the takings clause. *Id.* at 3 & n. 3; *see also* TEX. CONST. art. I, § 17.

In *Stein,* an owner of an apartment complex sued the Highland Park Independent School District for nuisance after the school district built an addition to a high school across the street from her complex. *Stein,* 540 S.W.2d at 552. The main entrance to the school violated the applicable zoning ordinances and caused repeated trespasses by the students across her property, constant harassment by students, and interferences with her and her tenants' use and enjoyment of the property. *Id.* Relying on nuisance cases predating the effective date of the Texas Tort Claims Act, the court concluded that sovereign immunity does not shield governmental entities from liability arising out of the creation or maintenance of a nuisance. *Id.* at 553. Because the cases relied on in *Stein* predate the Texas Tort Claims Act, we believe that this holding is too broad to accurately reflect current exceptions to the sovereign immunity doctrine.

 It is true that the Texas Tort Claims Act is not the sole source of waiver of sovereign immunity in Texas. Although the State, as sovereign, is generally immune from both liability and suit without its consent, actions for inverse condemnation brought pursuant to Article I, Section 17 of the Texas Constitution comprise a limited exception to the doctrine of sovereign immunity. *Tex. Dep't of Transp. v. City of Sunset Valley,* 8 S.W.3d 727, 732 (Tex.App.-Austin 1999, no pet.); *see also Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex.1997); *Bennett v. Tarrant County Water Control and Improvement Dist. No. One,* 894 S.W.2d 441, 448 (Tex.App.-Fort Worth 1995, writ denied); *State v. Biggar,* 848 S.W.2d 291, 295 (Tex.App.-Austin 1993), *aff'd,* 873 S.W.2d 11 (Tex. 1994). Furthermore, a claim for nuisance is an alternative ground of recovery under article I, section 17 and is, consequently, also an exception to sovereign immunity. *Tex. Dep't of Transp.,* 8 S.W.3d at 733; *see also Tarrant County v. English,* 989 S.W.2d 368, 374 (Tex.App.-Fort Worth 1998, pet. denied); *Golden Harvest Co.,* 942 S.W.2d at 688–90.

 However, Foster did not bring her suit in the nature of a takings claim. Instead, she sued Denton for simple nuisance arising from the condition of the classroom in which she taught. Therefore, because Foster's nuisance claim is not interrelated

with a taking under article I, section 17, we conclude that Foster's cause of action does not come within the stated exception to sovereign immunity. Therefore, the only other possible way Foster's nuisance claim could have survived Denton's assertion of sovereign immunity was if it had been brought pursuant to one of the exceptions to sovereign immunity found in the Texas Tort Claims Act. Foster acknowledges that her causes of action are not predicated on the Texas Tort Claims Act. But even if they were, the only exception to a school district's sovereign immunity is when the claimed injury arises from the operation or use of a motor vehicle, which is not Foster's contention in this case. TEX. CIV. PRAC. & REM.CODE ANN. § 101.051. Therefore, we hold the trial court correctly concluded that Denton was entitled to summary judgment on Foster's intentional tort claims based on its assertion of sovereign immunity.

■ Foster also argues that intentional pollution was an action recognized against governmental units at common law, thereby waiving Denton's sovereign immunity. *See Atlas Chem. Indus., Inc. v. Anderson,* 514 S.W.2d 309, 312–13 (Tex.Civ.App.-Texarkana 1974), *aff'd,* 524 S.W.2d 681 (Tex. 1975) (examining a common law action for damages resulting from the intentional discharge of pollutants). *Atlas* involved a situation in which a plant converting lignite into activated carbon discharged large quantities of wastewater containing acid, lignite, carbon, and other waste elements into creeks that flowed onto the plaintiff's land, rendering the water useless and destroying the vegetation around the area of the stream. *Id.* at 311–12. Foster appears to cite *Atlas* in an effort to bootstrap the intentional pollution cause of action to a nuisance claim and its established common law.

The *Atlas* court concluded that the doctrine of strict liability applies to the intentional discharge of pollutants just as it does "in the classic law of nuisance and trespass." *Id.* at 313. It is apparently this portion of the case on which Foster relies as support for her assertion that intentional pollution is inextricably tied to nuisance. Foster sums up *Atlas's* relevance to her case in a parenthetical stating that a "strict liability action for intentional pollution is in classic law of nuisance." We can find no language in *Atlas* that links intentional pollution with nuisance in such a way as to allow discussion of intentional pollution in terms of common law controlling a claim of nuisance. Even if we could, however, our conclusion concerning Denton's sovereign immunity in relation to Foster's nuisance claim would also control Foster's claim for intentional pollution.

■ Furthermore, while *Atlas* articulated the common law rules applicable to an intentional water pollution case against a private company, Foster has failed to present, nor can we find, any authority allowing a party to pursue a claim of intentional pollution against a governmental entity despite the governmental unit's sovereign immunity. *See id.* Generally, state agencies are immune from liability in Texas *unless the Legislature has waived the immunity.* *Kerrville State Hosp. v. Fernandez,* 28 S.W.3d 1, 3 (Tex.2000); *Fed. Sign,* 951 S.W.2d at 405. In fact, it is a well-settled rule that a clear and unambiguous legislative waiver of immunity is required before a court of this state will hold that sovereign immunity has been waived. *Kerrville State Hosp.,* 28 S.W.3d at 3; *City of LaPorte v. Barfield,* 898 S.W.2d 288, 291 (Tex.1995). We have already discussed above that there are several exceptions to this general rule. But without any authority to suggest that Foster's intentional pollution cause of action falls within an al-

ready established exception to sovereign immunity, we do not believe it is within our authority to establish an exception to sovereign immunity when the Texas Supreme Court has expressly stated that such a function falls to the Legislature. *See Kerrville State Hosp.*, 28 S.W.3d at 3. Therefore, we hold the trial court did not err in granting Denton summary judgment on Foster's intentional pollution claim.

## C. SAFE WORKPLACE

■ Foster also asserted a claim against Denton under article 5182a, section 4 of the civil statutes. Act of May 10, 1967, 60th Leg., R.S., ch. 201, § 3, 1967 Tex. Gen. Laws 441, 442 (amended 1985), *repealed and recodified by* Act of April 25, 1995, 74th Leg., R.S., ch. 76, § 9.54(a), (c), 1995 Tex. Gen Laws 458, 656–57 (current version at Tex. Lab.Code Ann. § 411.103). Article 5182a was repealed, though, and codified in chapter 411 of the labor code in 1995, which was in effect when Foster filed her suit in 1999. The activities giving rise to Foster's claims, however, occurred between 1990 and Foster's termination in 1998. Therefore, a portion of this time period was covered by article 5182a, while the last half was governed by chapter 411 of the labor code.

Foster complains about Denton's failure to satisfy its duties as an employer as required by statute, which was codified into chapter 411 without any substantive change. In fact, other than minor word choice, section 411.103 is virtually identical to its predecessor provision in article 5182a. *Compare* Tex. Lab.Code Ann. § 411.103 *with* Act of May 10, 1967, 60th Leg., R.S., ch. 201, § 3, 1967 Tex. Gen. Laws 441, 442 (amended 1985), *repealed and recodified by* Act of April 25, 1995, 74th Leg., R.S., ch. 76, § 9.54(a), (c), 1995 Tex. Gen Laws 458, 656–57 (current version at Tex. Lab.Code Ann. § 411.103).

However, Foster argues that article 5182a should apply because Denton's pattern of conduct in failing to take proper remedial action encompassed the time period between 1990 when she began working at Wilson Elementary School and 1998 when she was constructively terminated.

Without addressing which version of the statute was the appropriate version under which Foster should have brought her cause of action, we conclude that Denton is entitled to summary judgment under both versions. Chapter 411 limits a party's remedy for violation of the chapter. *See* Tex. Lab.Code Ann. § 411.104. Under the exclusive remedy provision of chapter 411, the only violation for which an employee may recover is the employee's retaliatory discharge for reporting safety violations to a telephone hotline. *Id.; see also id.* §§ 411.081–.083. There is no evidence in the record to suggest that Foster reported any alleged safety violations to a telephone hotline. Therefore, she failed to fulfill the requirements necessary to maintain a suit under chapter 411.

■ Moreover, Denton is immune to suit under the predecessor statute to chapter 411. While generally the Legislature must express a clear and unambiguous intent to waive sovereign immunity, the supreme court has explained that this requirement cannot be applied so rigidly that the almost certain intent of the Legislature is disregarded. *Kerrville State Hosp.*, 28 S.W.3d at 3; *Barfield*, 898 S.W.2d at 292. As such, the supreme court proposed that courts should not require perfect clarity if a statute leaves no reasonable doubt as to its purpose. *Barfield*, 898 S.W.2d at 292.

The Legislature routinely uses language that leaves no doubt about its intent to waive immunity. *See, e.g.,* Tex. Civ. Prac. & Rem.Code Ann. § 63.007(b) (Vernon Supp. 2002) ("The state's sovereign immunity to suit is waived...."); *Id.* § 81.010(d)

("Governmental immunity to suit is waived and abolished...."); *Id.* § 101.025 (Vernon 1997) ("Sovereign immunity to suit is waived...."); *Id.* § 103.101(a) ("... the state's immunity from the suit is waived."); *Id.* § 110.008(a) (Vernon Supp.2002) ("... sovereign immunity to suit and from liability is waived and abolished...."); TEX. EDUC.CODE ANN. § 51.901(b) (Vernon 1996) ("The defense of sovereign immunity shall not be available....").

Nevertheless, the supreme court has also found that the Legislature has waived sovereign immunity when the language of a statute leaves no reasonable doubt that the Legislature intended to waive the governmental unit's sovereign immunity. *See Kerrville State Hosp.*, 28 S.W.3d at 8 (holding that the legislature intended to waive sovereign immunity in the State Applications Act by designating state agency as an employer, which the legislature would not have done if they intended state agencies to be immune from anti-retaliation law claims); *Barfield*, 898 S.W.2d at 296–97 (concluding that the Legislature must have intended to waive immunity because the provisions of the anti-retaliation law are not susceptible to any sensible construction absent that conclusion).

Neither of these situations are apparent in the case at hand. The Legislature neither expressly waived sovereign immunity in article 5182a, nor are we unable to sensibly interpret the statute in light of sovereign immunity. Foster cites the Texarkana Court of Appeals' decision in *Cabrera v. Delta Brands, Inc.*, 538 S.W.2d 795, 797 (Tex.Civ.App.-Texarkana 1976, writ ref'd n.r.e.), in support of her assertion that article 5182a imposed a nondelegable duty on an employer to warn of hazardous conditions. However, *Cabrera* did not involve a suit against a governmental unit. Moreover, even if article 5182a provided for a private cause of action

against an employer who violated the article, Foster provides us with no argument to suggest why the Legislature obviously intended to waive a governmental unit's sovereign immunity in article 5182a. Therefore, after reviewing article 5182a, we conclude that there is no clear and unambiguous language expressing the Legislature's intent to waive sovereign immunity. Consequently, we hold the trial court did not err in granting Denton's summary judgment motion on the ground of sovereign immunity as to Foster's claims under article 5182a.

**D. TEXAS HEALTH AND SAFETY CODE VIOLATION**

Foster also sued Denton for violating Chapter 502 of the Texas Health and Safety Code by: (1) failing to inform her of the potential danger of the mold; (2) failing to provide her with training or protective equipment; and (3) constructively discharging her. *See* TEX. HEALTH & SAFETY CODE ANN. § § 502.001–020 (Vernon 1992 and Supp.2002). In its motion for summary judgment, Denton contended that it was entitled to summary judgment on Foster's claim on the ground of sovereign immunity and alternatively because Foster had failed to plead a cognizable cause of action under chapter 502.

Chapter 502 imposes primarily three distinct duties on employers whose employees are exposed to hazardous chemicals: (1) to compile a chemical list containing each hazardous chemical normally present in the workplace in excess of 55 gallons or 500 pounds; (2) to maintain a material safety data sheet for each hazardous chemical purchased; and (3) to provide education and training programs for employees who use or handle hazardous chemicals. *Id.* §§ 502.005, 502.006, 502.009. Assuming without deciding that the mold involved in this case could be

classified as a hazardous chemical, Foster failed to plead that the mold was normally present in the workplace in excess of 55 gallons or 500 pounds, that it was purchased by Denton, or that she had to use or handle it. As such, she failed to plead any violation of chapter 502 on Denton's part.

Foster also alleged in her petition that Denton improperly discharged her in violation of section 502.017, which provides that an employer may not discharge or discipline an employee because she filed a complaint, assisted an inspector of the department making an inspection, instituted a proceeding under chapter 502, testified in a proceeding under chapter 502, or exercised any rights afforded under chapter 502. *Id.* § 502.017(c). However, Foster explained in her petition that after her sick leave was exhausted and she did not return to work, Denton filed a workers' compensation employer's report of injury and she processed her termination in order to obtain her teachers' retirement benefits. As such, Foster failed to plead that Denton either disciplined or terminated her. Consequently, the trial court did not err in granting Denton's motion for summary judgment on Foster's claim for violation of chapter 502 on the ground that she failed to plead a cognizable cause of action under the chapter.[1] Foster's first issue is overruled.

## IV. HONEYWELL'S SUMMARY JUDGMENT

Honeywell also brought a no-evidence motion for summary judgment arguing that (1) Foster's suit was barred by statute of limitations; (2) there was no evidence to support Foster's causes of action against it; and (3) there is no private cause of action for an intentional violation of Texas law to provide a safe workplace as a matter of law. The trial court granted Honeywell's motion for summary judgment without specifying the ground on which it relied. Therefore, we will affirm the trial court's judgment if any of Honeywell's theories are meritorious. *Carr*, 776 S.W.2d at 569.

### A. NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. TEX.R. CIV. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.; In re Mohawk Rubber Co.*, 982 S.W.2d 494, 497–98 (Tex.App.-Texarkana 1998, orig. proceeding). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* TEX.R. CIV. P. 166a(i) cmt.; *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 71 (Tex. App.-Austin 1998, no pet.).

A no-evidence summary judgment is essentially a pretrial directed verdict, and we

---

1. Having concluded that the trial court could have correctly granted Denton's motion for summary judgment on the ground that Foster failed to plead a cognizable cause of action under chapter 502, we will not address Denton's alternative summary judgment argument that it was entitled to summary judgment on Foster's chapter 502 claim on the grounds of sovereign immunity. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989) (explaining that when trial court's order granting summary judgment does not specify ground relied upon for its ruling, judgment will be affirmed on appeal if any of theories advanced are meritorious).

apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Frazier v. Yu*, 987 S.W.2d 607, 610 (Tex.App.-Fort Worth 1999, pet. denied); *Moore*, 981 S.W.2d at 269. We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore*, 981 S.W.2d at 269.

### B. NEGLIGENCE

While Foster originally sued Honeywell for intentional pollution, intentional nuisance, and negligence, she subsequently amended her petition to drop the intentional pollution and intentional nuisance causes of action against Honeywell and to proceed only on her negligence claim. Even though Foster did not amend her petition until after Honeywell filed its motion for summary judgment, the trial court could not have granted summary judgment on claims no longer in existence. As such, we will only address Honeywell's no-evidence motion for summary judgment in relation to Foster's claim for negligence.

 The common law doctrine of negligence consists of three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). Honeywell argued in its motion for summary judgment that Foster failed to provide any evidence in support of any of the elements of her negligence cause of action.

 The threshold inquiry in a negligence case is duty. *Greater Houston Transp. Co.*, 801 S.W.2d at 525. The plaintiff must establish both the existence and the violation of a duty owed to the plaintiff by the defendant to establish liability in tort. *Id.* A duty represents a legally enforceable obligation to conform to a particular standard of conduct. *Way v. Boy Scouts of Am.*, 856 S.W.2d 230, 233 (Tex.App.-Dallas 1993, writ denied). Moreover, the existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Id.* at 233–34; *see also Greater Houston Transp. Co.*, 801 S.W.2d at 525; *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983).

 To determine whether a duty exists, we apply a risk-utility balancing test. We consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendants. *See Greater Houston Transp. Co.*, 801 S.W.2d at 525; *accord Eimann v. Soldier of Fortune Magazine, Inc.*, 880 F.2d 830, 834 (5th Cir.1989), *cert. denied*, 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990). Of these factors, foreseeability is the foremost and dominant consideration. *Greater Houston Transp. Co.*, 801 S.W.2d at 525. The test for foreseeability is "what one should under the circumstances reasonably anticipate as consequences of his conduct." *Way*, 856 S.W.2d at 234; *McCullough v. Amstar Corp.*, 833 S.W.2d 312, 315 (Tex. App.-Amarillo 1992, no writ) (quoting *City of Dallas v. Maxwell*, 248 S.W. 667, 670 (Tex. Comm'n App.1923, holding approved)).

In her amended petition, Foster argued that Honeywell had the duty to "maintain and monitor the HVAC equipment to provide a healthy indoor air environment for . . . Foster, and to advise [Denton] of any potential harmful contaminants to which . . . Foster, may be exposed." Specifically, Foster argued that Honeywell was negligent in its failure to properly maintain and monitor the HVAC unit and by allowing standing water under the school building to become infested with mold and fungus.

■ In response to Honeywell's no-evidence motion for summary judgment, Foster pointed to several pieces of evidence that she claimed amounted to more than a scintilla of evidence in support of each element of her negligence claim. Foster relies on the contract between Honeywell and Denton for the installation of the HVAC unit, which obligated Honeywell to monitor and maintain the equipment and change the air filters four times a year. Foster also points to a report about the indoor air quality of Wilson Elementary that Honeywell prepared in October 1991 as required by the contract. This report indicated that one teacher complained that her allergies were exacerbated by the air quality in her classroom, which also irritated her eyes during the week. The school nurse and another teacher also apprized the Honeywell inspector that the staff seemed to have more allergy problems during the school year. The report explains that there had been a history of roof leaks, foundation leaks, and a recent flood of the room by a pipe break. It also reported that a termite control specialist indicated the presence of standing water in the crawl space below the "C" wing. Finally, Foster points to her doctor's medical report and to her and her husband's affidavits that link her persistent health problems to the existence of microbiological growth under her classroom.

Foster is correct that the contract between Denton and Honeywell imposed a duty on Honeywell to monitor and maintain the HVAC unit and change the air filters every four months. In reading Foster's pleading, her only allegation that Honeywell performed these duties unsatisfactorily was that Honeywell "allowed the presence of standing water under the school building to become contaminated with excessive levels of molds and fungus," which were distributed through the building by the HVAC unit. However, we cannot understand how these contractual obligations support Foster's allegation.

The only contract term relevant to air quality in the school was the requirement that Honeywell conduct a three-day diagnostic consultation at Wilson Elementary "to determine the general scope of indoor air quality problems in the client's facility." The purpose of this consultation was to analyze the information collected and provide recommendations to mitigate indoor air quality problems. As evident from Honeywell's report of air quality, Honeywell satisfied its obligations by informing Denton of the standing water under the building and warning of the possibility of microbiological growth from carpet remaining wet for a prolonged period. Moreover, the contract specifically provided that "[i]n performing such services, Honeywell's representative(s) shall not do extensive on-site testing or microbiological sampling." Therefore, there is no evidence that the contract imposed a duty on Honeywell to ensure that the air did not contain microbiological agents; instead, all of the evidence suggests that Honeywell satisfied all of the requirements of its contract with Denton.

■ Furthermore, disregarding the language of the contract, we can find no evidence that Honeywell should have foreseen or been responsible for the fact that

standing water under Denton's building could become contaminated with molds and fungi. We believe the balancing of the factors relevant in determining whether a duty exists would establish that Honeywell had no duty to ensure that standing water under a building on which it maintains HVAC units could not become contaminated with mold and fungi that could at some point in the future be sucked up by the equipment it is installing and distributed throughout the building. In this case, it would be extremely detrimental to merchants such as Honeywell to require them to guarantee the absence of future contamination of the air by microbiological agents when it has absolutely no control over microbiological growth under and around the customer's building. Instead, Honeywell was only paid to install the HVAC units. Therefore, if Foster had complained that the HVAC unit itself had caused the poor air quality by an inherent flaw or its malfunction, our conclusion may have been different. However, absent such a showing, any requirement to warrant that no microbiological contaminants are growing under the building would be overly burdensome to Honeywell when Denton has the ready capability to clean up standing water, the existence of which it was made aware. As such, we conclude that neither the contract between Honeywell and Denton nor the respective factors as applied in this case imposed a duty on Honeywell to prevent the water standing under the building from becoming contaminated with molds and fungi that could be distributed throughout the building through the HVAC system. Consequently, we hold that the trial court did not err in granting Honeywell's no-evidence motion for summary judgment in relation to Foster's negligence cause of action. Foster's second issue is overruled.

## V. CONCLUSION

Having overruled Foster's issues on appeal, we affirm the trial court's judgment.