02-11-087-CV-REH









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-11-00087-CV

 

 


 
 
 Barry Wood, Jr.
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Merrill Wells, VOA Facility Director, Ft. Worth and
 Volunteers of America, TX Inc.
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

 

FROM THE 348th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          On the court’s own motion,
we withdraw the opinion and judgment dated October 13, 2011, and substitute the
following.

I.  Introduction

          Appellant
Barry Wood, Jr. appeals the trial court’s summary judgment in favor of
Appellees Merrill Wells, VOA Facility Director, Ft. Worth and Volunteers of
America, TX Inc. (VOA).  We will affirm.

II.  Factual
and Procedural Background

          In
2007, a federal court convicted Wood of false statement in passport application
and sentenced him to twenty-seven months’ confinement and a period of
supervision.  Wood served part of his sentence at the Bureau of Prisons’s (BOP)
Federal Correctional Complex (FCC) in Beaumont, Texas.  In March 2009, the FCC
sent a referral to Lola Lee Brown, a Community Corrections Manager (CCM) for
the BOP, indicating that Wood would soon be eligible for an early release and
placement in a Residential Reentry Center (RRC).

          Several
months later, the FCC approved Wood’s application for a furlough to travel by
town driver, bus, and taxi, without an escort, to Fort Worth, Texas, to serve
the remaining portion of his sentence at an RRC operated by the VOA.  Wood’s
predetermined travel itinerary indicated that a town driver would depart the FCC
with Wood on September 4, 2009, at 10:30 a.m. and drive him to the Greyhound
Bus Station.  Wood’s bus was scheduled to leave Beaumont at 11:30 a.m. for Fort
Worth.[2]  Wood’s anticipated
arrival in Fort Worth was 10:30 p.m. on September 4, 2009.  He was then
scheduled to take a taxi to the RRC, where he was scheduled to arrive no later
than 11:30 p.m. that night.

          According
to Wood, his initial 11:30 a.m. departure from Beaumont was delayed to 12:30 p.m. 
However, that bus was oversold, so Wood was bumped to a 1:00 p.m. departure bus
that did not arrive in Houston until 2:15 p.m.  He therefore missed his
originally scheduled 1:45 p.m. departure from Houston, so Greyhound rescheduled
him for the 5:00 p.m. bus.  Wood was bumped again and did not depart Houston
until 6:15 p.m.  He arrived in Dallas at 11:50 p.m., departed Dallas on the
12:15 a.m. bus, and arrived in Fort Worth at 1:00 a.m.  He then rode by taxi to
the RRC, where he arrived after 1:00 a.m., nearly two hours past his
anticipated arrival.

          The
conditions of Wood’s furlough, which he signed, stated, “I agree to contact the
institution (or United States Probation Officer) in the event of arrest, or any
other serious difficulty or illness.”  Wood apparently attempted to notify the VOA
of his delay, but because the call was long distance and transferees are not
authorized to carry cell phones, Wood called the VOA collect.  His call was met
by a recording that was unable to accept the long distance charges.  Wood
therefore placed a collect call to his mother, Rojeane Wood, who accepted his
call and agreed to notify the VOA of his delay.

          Rojeane
called the VOA at 4:30 p.m. on September 4, 2009, to inform it of the delay and
Wood’s attempted collect call.  The VOA staff told Rojeane to call the home
institution, the FCC, instead.  Rojeane therefore phoned the FCC to tell them
that Wood would be arriving late to the VOA due to bus delays beyond his
control.  The FCC informed Rojeane that she needed to call the VOA, so she
called the VOA again and left a message with a monitor.  She stated what the FCC
had told her and that Wood would be late due to bus delays.

          At
12:55 a.m. on September 5, 2009, Felicia Jackson, a VOA employee, prepared an
incident report citing Wood for violating conditions of his furlough because
his anticipated time of arrival had passed but he was still not present at the VOA. 
The report did not mention any conversation with Wood’s mother regarding the
delay.  Jackson called the FCC at 12:19 a.m., and an officer told her that Wood
had left the FCC the previous morning.  Her report did not indicate that the
FCC officer had mentioned receiving a phone call from Wood’s mother, although Wells,
the VOA’s facility director, contended that Jackson had been informed of Wood’s
delay.

          Wood
met with Wells the following Tuesday to discuss the late arrival.  Wood
explained the bus delays and gave Wells a handwritten document that outlined
the chronology of events from September 4, 2009.  Wells understood Wood when he
explained that both the FCC and the VOA had been alerted that Wood would be
arriving late, and Wells later admitted that Wood had informed him that he was
bumped from the bus departing from Beaumont, but Wells denied that Wood had
told him that he was bumped from the bus departing from Houston.

          Wells
did not conduct an investigation before contacting his superior, Lola Brown,
Community Corrections Manager (CCM), about the incident because Wood said that
he had taken another bus without contacting the FCC or the VOA, in violation of
his furlough.  Wells told Brown that Wood had given up his seat on the bus that
he was scheduled to take.  Based on discussions with Wells and an FCC staff
member, Brown made the administrative decision to have Wood incarcerated for
thirty days in the Mansfield City Jail pending a determination of his
suitability for RRC placement.  Wood subsequently appealed to the BOP and filed
grievances with the Texas Department of State Health Services and Brown.  In
his appeal to the BOP, Wood complained that the VOA staff did not relay to the
staff working the next shift that he would be delayed in arriving to the VOA. 
He also claimed that Wells violated the code of federal regulations by denying him
a hearing regarding the late arrival.  In her response to Wood’s grievance,
Brown stated that Wood’s due process rights were not violated when he did not
receive a hearing because her decision to transfer him to the Mansfield City Jail
was an administrative, not a disciplinary, decision made by her.

          Wood
sued Wells and the VOA, alleging claims against Wells for breach of fiduciary
duty and gross negligence and a claim against the VOA for negligence based on Wells’s
acts or omissions.  Wood specifically complained that the VOA was liable “for
its staff member[s’] negligence in failing to relay critical information about
[his] delay” and that Wells was grossly negligent for “omitting exculpatory
evidence favoring [Wood] in his representation to the CCM.”  Wood sought
economic damages from loss of potential employment; damages resulting from
emotional pain, suffering, and mental anguish; and exemplary damages for Wells’s
alleged intentional and malicious conduct.  The VOA and Wells filed no-evidence
and traditional motions for summary judgment on Wood’s claims.  Wood responded
to the motions and attached as evidence two affidavits (one by Rojeane and one
by Jonathan Baumgardner) and his referral for RRC placement.  The trial court
granted Appellees’ motions, and this appeal followed.

III.  Standard
of Review

          When
a party moves for summary judgment under both rules 166a(c) and 166a(i), we
will first review the trial court’s judgment under the standards of rule
166a(i).  Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). 
If the appellant failed to produce more than a scintilla of evidence under that
burden, then there is no need to analyze whether the appellee’s summary
judgment proof satisfied the less stringent rule 166a(c) burden.  Id.

          After
an adequate time for discovery, the party without the burden of proof may,
without presenting evidence, move for summary judgment on the ground that there
is no evidence to support an essential element of the nonmovant’s claim or
defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence.  Id.; Timpte Indus., Inc. v.
Gish, 286 S.W.3d 306, 310 (Tex. 2009).  The trial court must grant the
motion unless the nonmovant produces summary judgment evidence that raises a
genuine issue of material fact.  See Tex. R. Civ. P. 166a(i) & cmt.;
Hamilton v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008).

          When
reviewing a no-evidence summary judgment, we examine the entire record in the
light most favorable to the nonmovant, indulging every reasonable inference and
resolving any doubts against the motion.  Sudan v. Sudan, 199 S.W.3d
291, 292 (Tex. 2006).  We review a no-evidence summary judgment for evidence
that would enable reasonable and fair-minded jurors to differ in their
conclusions.  Hamilton, 249 S.W.3d at 426 (citing City of Keller v.
Wilson, 168 S.W.3d 802, 822 (Tex. 2005)).  We credit evidence favorable to
the nonmovant if reasonable jurors could, and we disregard evidence contrary to
the nonmovant unless reasonable jurors could not.  Timpte Indus., 286
S.W.3d at 310 (quoting Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582
(Tex. 2006)).  If the nonmovant brings forward more than a scintilla of
probative evidence that raises a genuine issue of material fact, then a
no-evidence summary judgment is not proper.  Smith v. O’Donnell, 288
S.W.3d 417, 424 (Tex. 2009); King Ranch, Inc. v. Chapman, 118 S.W.3d
742, 751 (Tex. 2003), cert. denied, 541 U.S. 1030 (2004).

          When
a trial court’s order granting summary judgment does not specify the ground or
grounds relied on for its ruling, as is the case here, summary judgment will be
affirmed on appeal if any of the theories presented to the trial court and
preserved for appellate review are meritorious.  Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003); Star-Telegram,
Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995).

IV.  Breach
of Fiduciary Duty

          In
his first issue, Wood argues that the trial court erred by granting Wells’s
no-evidence motion for summary judgment on Wood’s breach of fiduciary duty
claim because a genuine fact issue exists that a fiduciary relationship existed
between himself and Wells.

          As
this court has explained,

Due to its
extraordinary nature, the law does not recognize a fiduciary relationship
lightly.  Therefore, whether such a duty exists depends on the circumstances.

 

Fiduciary
duties may arise from formal and informal
relationships and may be created by contract. . . .  A person is
justified in placing confidence in the belief that another party will act in
his best interest only where he is accustomed to being guided by the judgment
or advice of the other party and there exists a long association in a business
relationship as well as personal friendship.  Thus, the relationship must exist prior to and apart from
the agreement that is the basis of the suit.

 

Rice
v. Metro. Life Ins. Co., 324
S.W.3d 660, 678 (Tex. App.—Fort Worth 2010, no pet.) (citing Cotten
v. Weatherford Bancshares, Inc., 187
S.W.3d 687, 698 (Tex. App.—Fort Worth 2006, pet. denied)); cf. Berry v. First Nat’l Bank of Olney, 894
S.W.2d 558, 560 (Tex. App.—Fort Worth 1995, no writ) (holding that bank did not
automatically have a fiduciary relationship with its customers and that the
customers therefore had the burden to respond to the bank’s summary judgment
motion by providing evidence of specific facts showing a special relationship).

          Here,
although Wells was required under contract to follow certain guidelines with
respect to the VOA’s clients, the record contains no evidence that Wood and
Wells had any type of relationship prior to Wood’s arrival at the VOA.  Most
importantly, Wood’s summary judgment evidence—Rojean’s affidavit, Baumgardner’s
affidavit, and the RRC placement referral—does not address any matter regarding
a fiduciary relationship between Wood and Wells.  Therefore, because Wood
failed to produce more than a scintilla of evidence raising a genuine issue of
material fact that Wells owed Wood a fiduciary duty, we hold that the trial
court did not err by granting Wells’s no-evidence motion for summary judgment
on Wood’s breach of fiduciary duty claim.  We overrule Wood’s first issue. 
Having overruled Wood’s first issue, we need not address his second issue
arguing that he raised a fact issue that Wells breached his fiduciary duty to
Wood.  See Tex. R. App. P. 47.1.

V.  Negligence
and Gross Negligence

          In
his third issue, Wood argues that the trial court erred by granting Appellees’ no-evidence
motion for summary judgment on his negligence claim.  Among other grounds, Appellees
moved for summary judgment on the damages element of Wood’s negligence claim.

          The
common law doctrine of negligence consists of three elements:  (1) a
legal duty owed by one person to another, (2) a breach of that duty, and
(3) damages proximately resulting from the breach.  Greater Houston Transp. Co. v.
Phillips, 801 S.W.2d 523, 525 (Tex. 1990); Foster v.
Denton ISD, 73 S.W.3d 454, 465 (Tex. App.—Fort Worth 2002, no pet.).  A finding of ordinary negligence is a prerequisite
to a finding of gross negligence.[3]  Wortham v. Dow Chem.
Co., 179 S.W.3d 189, 202 n.16 (Tex. App.—Houston [14th Dist.] 2005, no pet.);
Hall v. Stephenson, 919
S.W.2d 454, 467 (Tex. App.—Fort Worth 1996, writ denied).

          As
with the issue above, Wood’s summary judgment evidence consists of only
(1) his mother’s affidavit detailing her attempts to notify the VOA and
the FCC that Wood was running late on September 4, 2009; (2) Baumgardner’s
affidavit stating that he did not experience any “negative consequences” when
he arrived late to the VOA; and (3) the RRC placement referral.  These
documents contain no evidence raising a genuine fact issue that Wells (and the
VOA based on respondeat superior) proximately caused Wood damages.

          In
his brief, Wood references other portions of the record to support his
argument, but pleadings do not constitute summary judgment evidence.  See
Nicholson v. Mem’l Hosp. Sys., 722 S.W.2d 746, 749 (Tex. App.—Houston [14th
Dist.] 1986, writ ref’d n.r.e.).  The focus of a no-evidence summary judgment
is shifted from the pleadings to the actual evidence or proof to assess whether
there is a genuine need for a trial.  LaGoye v. Victoria Wood Condo. Ass’n,
112 S.W.3d 777, 787 (Tex. App.—Houston [14th Dist.] 2003, no pet.).  Both a
motion for summary judgment and a response to a motion for summary judgment are
pleadings.  Nicholson, 722 S.W.2d at 749.  To the extent that Wood
relies on facts mentioned in any pleadings to raise a fact issue, those facts
do not constitute summary judgment evidence.  See Laidlaw Waste Sys.
(Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 660 (Tex. 1995); Strachan
v. FIA Card Servs., No. 14-09-01004-CV, 2011 WL 794958, at *3 (Tex.
App.—Houston [14th Dist.] Mar. 8, 2011, pet. filed) (mem. op.); Solano v.
Landamerica Commonwealth Title of Fort Worth, Inc., No. 02-07-00152-CV,
2008 WL 5115294, at *11 (Tex. App.—Fort Worth Dec. 4, 2008, no pet.) (mem.
op.); Quanaim v. Frasco
Rest. & Catering, 17 S.W.3d 30, 42 (Tex. App.—Houston [14th Dist.] 2000,
pet. denied).

          In
his brief, Wood also directs us to evidence that Appellees attached to their
traditional motion for summary judgment (CR 233: 42:4) to show that a genuine fact
issue was raised as to damages.  Appellees made it abundantly clear that the
evidence attached to their traditional motion for summary judgment was for
purposes of demonstrating their entitlement to summary judgment on traditional
grounds, and they did not attach any evidence to their no-evidence motion for
summary judgment.  This is permissible summary judgment practice.  See Binur
v. Jacobo, 135 S.W.3d 646, 651 (Tex. 2004) (“The fact that evidence may be
attached to a motion that proceeds under subsection (a) or (b) does not
foreclose a party from also asserting that there is no evidence with regard to
a particular element.”).  Further, although Wood filed a response, in the
portion of his response addressing damages, he did not direct the trial court
to any evidence attached to Appellees’ traditional motion for summary judgment
or point out the existence of any fact issues regarding damages raised by that
evidence.  See Viasana v. Ward Cnty., 296 S.W.3d 652, 655 (Tex. App.—El
Paso 2009, no pet.) (reasoning that it was inappropriate to consider evidence
attached to traditional motion for summary judgment in connection with review
of no-evidence motion because nonmovant did not file response referencing
evidence attached to traditional motion for summary judgment).  Consequently, the
only evidence that we may consider in this no-evidence analysis consists of the
three documents that Wood attached to his summary judgment response—his
mother’s affidavit, Baumgardner’s affidavit, and the RRC placement referral.

          We hold that the trial court did not err by
granting Appellees’ no-evidence motion for summary judgment on Wood’s
negligence and gross negligence claims.  We overrule Wood’s third issue.

VI.  Conclusion

          Having overruled all three of Wood’s issues, we
affirm the trial court’s order granting Appellees’ motions for summary
judgment.

 

 

BILL MEIER

JUSTICE

 

PANEL: 
WALKER,
MCCOY, and MEIER, JJ.

 

DELIVERED:  November 10,
2011









[1]See Tex. R. App. P. 47.4.





[2]Wood’s Greyhound travel
itinerary included four layovers, one of which was three-and-a-half hours long.





[3]Gross negligence involves
two additional components:  (1) viewed objectively from the
actor’s standpoint, the act or omission complained of must involve an extreme
degree of risk, considering the probability and magnitude of the potential harm
to others; and (2) the actor must have actual, subjective awareness of the
risk involved, but nevertheless proceed in conscious indifference to the rights,
safety, or welfare of others.  Coastal Transp. Co., Inc. v. Crown Cent.
Petroleum Corp., 136 S.W.3d 227, 231 (Tex. 2004).