THE CITY OF SAN ANTONIO,
Appellant,

v.

Charles POLLOCK and Tracy Pollock, Individually and as Next Friends of Sarah Jane Pollock, Appellees.

No. 04–03–00403–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 18, 2004.

Rehearing Overruled Nov. 16, 2004.

Sharon E. Callaway, Nissa M. Sanders, Crofts & Callaway, P.C., Amy M. Eubanks, Donald S. Bayne, Asst. City Atty's, San Antonio, for appellant.

Cathy J. Sheehan, Laura A. Cavaretta, Plunkett & Gibson, Inc., Sylvan S. Lang, Jr., Lang & Kustoff, L.L.P., Jennifer B. Rosenblatt, Rosenblatt Law Firm, Susan G. Gray, Law Office of Susan G. Gray, San Antonio, for appellees.

Timothy Patton, Timothy Patton, P.C., San Antonio, for other.

Sitting: ALMA L. LÓPEZ, Chief Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

This case is before us on Appellant's motion for rehearing. We deny Appellant's motion; however, we withdraw our opinion and judgment of May 12, 2004, and substitute this opinion and judgment in its stead.

In 1992, Charles and Tracy Pollock moved into a home at 10811 Mount Mesabi. The backyard of the home abutts the West Avenue Landfill Project, a landfill owned and operated by the City of San Antonio. In the fall of 1993, Tracy became pregnant, and on June 24, 1994, Sarah Pollock was born. In January of 1998, Sarah was diagnosed with acute lymphocytic leukemia.

According to the Pollocks, while Tracy was pregnant with Sarah, benzene from the landfill leaked into their home and backyard. This exposure to benzene, they contend, caused Sarah's leukemia.

The Pollocks sued the City of San Antonio for negligence, nuisance, and trespass. The jury found for the Pollocks on negligence and nuisance. Additionally, the jury found that the City had acted with malice. The jury awarded $7 million in personal injury damages to Sarah. The jury also awarded $6,111,000 for past and future medical care, $10,000 for loss of use and enjoyment of property, $19,000 for difference in market value, and $10 million in exemplary damages to the Pollocks. The trial court rendered judgment in conformity with the verdict, with the exception of reducing the $6 million award of future medical care to $500,000. The City brings the following issues on appeal:

(1) Is the City immune from the Pollocks' nuisance claim? Specifically, did the plaintiffs bring a nuisance action under article I, section 17, of the Texas Constitution? Is there legally sufficient evidence that the City committed non-negligent acts?

(2) Are personal injury damages recoverable in a nuisance action under article I, section 17, of the Texas Constitution?

(3) Does the "community damage rule" bar the Pollocks' recovery of property damages?

(4) Is there legally sufficient evidence of causation? Specifically, does the evidence establish cause-in-fact? Does the scientific evidence meet the reliability requirements of Texas law as outlined in *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706 (Tex.1997)? Alternatively, is recovery barred because there is no jury finding of causation?

(5) Did the Pollocks waive their negligence claim by failing to submit it as a premises defect claim? Does the Pollocks' negligence claim fall within the limited waiver of immunity provided by the Texas Tort Claims Act ("TTCA")? Alternatively, are the Pollocks' damages under the TTCA limited to $250,000?

(6) Are the Pollocks entitled to exemplary damages? Alternatively, should their exemplary damages be reduced?

We reverse that portion of the trial court's judgment awarding exemplary damages and render judgment that the Pollocks take nothing with respect to exemplary damages. We affirm the remainder of the judgment.

### Immunity from Nuisance

The jury found the City liable for nuisance. On appeal, the City contends that it is immune from the Pollocks' nuisance claim because (1) the claim was not brought as a takings claim; and (2) there

is no evidence that the City committed non-negligent acts. We disagree.[1]

### 1. Nuisance under the Texas Constitution

The Texas Constitution provides: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made ..." TEX. CONST. art. I, § 17. This provision waives governmental immunity for the taking, damaging, or destruction of property for public use. *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex.1980).

A party is entitled to compensation when his property has been damaged, as fully as if his property had been actually taken or destroyed. *Id.* at 790. Not all damages, however, are compensable. *Id.* The Constitution limits compensation to damages "for or applied to public use." *Id.* Courts have narrowed that phrase to mean damages incident to the construction and operation of a public work. *Id.*

Courts also permit recovery of damages upon proof of a nuisance. *Id.* at 791. To come within the article I, section 17, exception to governmental immunity, however, a party must bring her nuisance suit "in the nature of a takings claim." *Foster v. Denton Indep. Sch. Dist.*, 73 S.W.3d 454, 460 (Tex.App.-Fort Worth 2002, no pet.); *see also Golden Harvest Co. v. City of Dallas*, 942 S.W.2d 682, 688 (Tex.App.-Tyler 1997, pet. denied) ("A party must bring suit on a constitutional taking cause of action pursuant to Article I, Section 17 of the Texas Constitution ...").

The City alleges that the Pollocks' nuisance claim does not come within the constitutional waiver of immunity because it was not brought as a takings claim. The elements of a takings claim are: (1) that the governmental unit intentionally performed certain acts, (2) that the acts resulted in a taking or damaging of the property; and (3) that the taking was for public use. *Loyd v. ECO Resources, Inc.*, 956 S.W.2d 110, 128 (Tex.App.-Houston [14th Dist.] 1997, no pet.) Here, the Pollocks pled that the City "created and maintained a continuing nuisance" by permitting "toxic chemicals and substances to accumulate and to escape the confines and boundaries of the West Avenue Landfill." The Pollocks further pled that the City's nuisance "was both public and private" and that as a result of the nuisance, the Pollocks suffered "loss of the enjoyment and use" and "diminishment of the value" of their property. These allegations show that the Pollocks brought their nuisance suit "in the nature of a takings claim." *Foster*, 73 S.W.3d at 460. Accordingly, we overrule this issue on appeal.

### 2. Evidence of Non–Negligence

In order to fall within the waiver of immunity provided by article I, section 17, of the Texas Constitution, a nuisance claim must be based on non-negligent acts. *City of Tyler v. Likes*, 962 S.W.2d 489, 503–04 (Tex.1997); *see also Tex. Highway Dep't v. Weber*, 147 Tex. 628, 630, 219 S.W.2d 70, 71 (1949) (providing that if damage is clearly attributable to negligent acts of governmental unit, there is no liability under rationale that damaging from unintended and negligent acts results in no

---

1. We note that the parties brief the issue of whether the City waived the defense of immunity from liability by failing to plead it in accordance with Texas Rule of Civil Procedure 94. Related to that argument is an argument the City raises in its reply brief: namely, that the trial court erred in refusing to allow the City to amend its pleadings post-verdict to raise the defense of immunity from liability. Because, however, we hold that the City is not immune from the Pollocks' nuisance claim, we need not address these arguments.

benefit to public). "[N]on-negligence means beyond negligence, as in gross negligence or an intentional act." *Tarrant County v. English*, 989 S.W.2d 368, 374 (Tex.App.-Fort Worth 1998, pet. denied) (internal quotations omitted). Additionally, to maintain a cause of action for nuisance, a plaintiff must be able to show the alleged nuisance is inherent in the condition or thing itself, beyond that arising from alleged improper or negligent use. *See Loyd*, 956 S.W.2d at 133; *Schneider v. City of Cuero*, 749 S.W.2d 614, 617 (Tex. App.-Corpus Christi 1988, writ denied).

The City argues that there is no evidence that the migration of benzene and other toxic gases is *inherent* in the operation of landfills. We disagree. At trial, experts testified that migration of landfill gas containing benzene and other toxins is inherent in the operation of landfills. Les Montgomery, the City's expert, testified by deposition that "benzene is a normal constituent in a municipal landfill," and that landfill gas migrating outside of a landfill and going up into people's homes is "a consideration for municipal landfills." Additionally, Daniel Kraft, the Pollocks' expert, in describing the systems that monitor gas migration from landfills, explained that "we already know that the landfill—the landfill contains methane gas; so, the purpose of the probe being installed outside the waste is to monitor migration from the waste beyond the limits of the waste—or outside the landfill, if you will." Because there is evidence that the migration of benzene and other toxic gases is inherent in the operation of landfills, we overrule this argument on appeal.

■ The City also contends that there is no evidence that the City committed non-negligent, i.e., grossly negligent or intentional, acts. Again, we disagree. Here, there is evidence of an intentional failure to act. *See Bible Baptist Church v.*

*City of Cleburne*, 848 S.W.2d 826, 830 (Tex.App.-Waco 1993, writ denied) (holding that summary judgment improper where fact questions existed about whether city failed to correct cause of sewer backup). Stacy Shipley, who was in charge of monitoring and maintaining the landfill from 1992 to 1996, testified that despite her recommendation in February 1994 that test probes should have been installed in "backyards along the perimeter of the landfill to verify that the methane is not migrating," the City failed to install those test probes. Additionally, despite reports in 1994 that "the design of the [methane] system in place is no longer meeting the needs to insure compliance and safety," the City failed to install a new system until 1997. Further, Shipley testified that despite a recommendation from the TNRCC that the City test at ten feet below the soil, the City never tested below two to three feet. In fact, even though gas had been detected at the Pollock residence, the City failed to further test the Pollock residence. Also, despite the City's knowledge that methane gas was migrating into the neighborhood, the City represented to the First Federal Savings Bank that "no environmental concerns exist." Moreover, when Charles Pollock inquired about the landfill before buying his home, the City told him, "It's just methane," and, "It's no health hazard," despite a memo of a City employee in 1983 reporting that "any level of benzene [is] excessive. Benzene is a suspected carcinogen. All wells exceed acceptable levels for benzene." Because there is evidence that the City knew of the gas migration problem and intentionally failed to act, we hold that there is legally sufficient evidence that the City acted with non-negligence.

■ The City also argues that there is no evidence of non-negligence "during the relevant time of Sarah's gestation period."

The City fails, however, to tell us why this is necessary. As such, it has failed to properly brief this argument. TEX.R.APP. P. 38.1(h). Even so, the argument is without merit. In order to prove causation, it is necessary that the *nuisance* have existed during Sarah's pregnancy, not the acts which caused the nuisance.

### PERSONAL INJURY DAMAGES UNDER ARTICLE I, SECTION 17

■ The jury awarded Sarah $7 million in personal injury damages. The jury also awarded the Pollocks $6,111,000 for past and future medical care. The trial court rendered judgment on the verdict, with the exception of reducing the $6 million award of future medical care to $500,000. On appeal, the City argues that an article I, section 17, nuisance claim does not entitle a party to personal injury damages. According to the City, article I, section 17, waives immunity only for damage to property. We disagree.

■ Texas law provides that damages for personal injuries may be recovered in a nuisance action. *City of Uvalde v. Crow*, 713 S.W.2d 154, 158–59 (Tex.App.-Texarkana 1986, writ refused n.r.e.) (citing *Vann v. Bowie Sewerage Co.*, 127 Tex. 97, 101, 90 S.W.2d 561, 563 (1936)); *see also City of Fort Worth v. Crawford*, 74 Tex. 404, 408, 12 S.W. 52, 54 (1889) ("And when a municipal corporation has ample power to remove a nuisance that is injurious to health, endangers the safety or impairs the convenience of its citizens, or when in the prosecution of a public work it creates a nuisance, (or permits it to remain,) it is liable for all the injuries that result from a failure on its part to properly exercise the power possessed by it, and for the injuries resulting from its unlawful acts."); *see also Town of Jacksonville v. McCracken*, 232 S.W. 294, 294–96 (Tex.App.1921) (affirming an award of $100 for medicine and medical

services and $3,000 for wrongful death where the contents of a City-operated septic tank "meandered through [plaintiffs'] premises and to within 75 feet of their residence"). Accordingly, we overrule this issue on appeal.

### COMMUNITY DAMAGE RULE

■ The jury awarded the Pollocks $10,000 for loss of use and enjoyment of property and $19,000 for difference in market value. On appeal, the City argues that the Pollocks do not meet the "community damage rule" and therefore are not entitled to recover these damages.

■ Texas law allows recovery under article I, section 17, *only* if the injury is not one suffered by the community in general. *Felts v. Harris County*, 915 S.W.2d 482, 484 (Tex.1996). "[I]njuries to property received or sustained in common with the community in which the property is situated, and resulting from the operation of a public work, are community in nature," and "give rise to no compensation." *Id.* at 485.

■ Here, however, the Pollocks pled and provided evidence that the migration of benzene and other toxic gases from the landfill damaged their property in particular. For example, there was evidence that such migration caused subsidence in the Pollocks' backyard.

> If ... a public work is constructed which inflicts an injury peculiar to certain property not suffered in common with other property in the community or section, then such property is "damaged" within the meaning of the Constitution, and the law will not permit the infliction of such injury without the allowance of just compensation....

*State v. Schmidt*, 867 S.W.2d 769, 780 (Tex.1993); *cf. Felts*, 915 S.W.2d at 486 ("In this case, the record does not indicate

that the Feltses' damages would be different in kind from that of any of their neighbors."). This is not a case of "diminution to property values caused by diversion of traffic, inconvenience of access, impaired visibility of ground level buildings, [or] disruption by construction activities from the conversion of a roadway ..." *Wilkinson v. Dallas/Fort Worth Int'l Airport Bd.*, 54 S.W.3d 1, 14 (Tex.App.-Dallas 2001, pet. denied). To the contrary, the Pollocks pled and proved an injury to their property that is "special ... in nature." *See id.* at 13. Accordingly, we overrule this issue on appeal.

## CAUSATION

At trial, the jury found that the City's activities were a nuisance and caused the Pollock's damages. On appeal, the City argues that there is legally insufficient evidence of causation, for three reasons: (1) the jury was allowed to stack inference upon inference in order to find that benzene caused Sarah's leukemia; (2) the evidence does not meet the reliability requirements of Texas law as outlined in *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706 (Tex.1997); and (3) there is no jury finding of causation.

First, the City argues that there is legally insufficient evidence of causation because the jury was allowed to stack inference upon inference to find that benzene caused Sarah's leukemia. An appellant attacking the legal sufficiency of an adverse finding on which he did not have the burden of proof must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). The reviewing court must consider all evidence in a light most favorable to the party in whose favor the verdict has been rendered and indulge every reasonable inference from the evidence in such party's favor. *Harbin v. Seale*, 461 S.W.2d 591, 592 (Tex.1970). If more than

a scintilla of evidence exists to support the finding, the no-evidence challenge fails. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998).

Here, the record reflects that benzene migrated from the landfill onto the Pollocks' property while Tracy was pregnant with Sarah. In 1983, benzene was detected in a test well that was 50 feet from the Pollocks' backyard. In 1990, there were gas concentrations of 14% and 30% found at the Edwards well just 20 feet outside the Pollocks' property line. On January 30, 1998, there was benzene detected at a gas monitoring probe 30 feet from the Pollocks' backyard. Additionally, there were substantial levels of methane at probes near the Pollocks' home in 1998, 1999, and 2000.

Dan Kraft, an expert hired by the Pollocks, used the gas sample from 1998 to create a methane-to-benzene ratio estimating the amount of benzene in and around the Pollocks' home when Tracy was pregnant with Sarah. This ratio, according to Kraft, shows that the Pollocks were chronically exposed to a benzene concentration of 40 to 160 parts per billion or higher. Les Montgomery, the City's expert, also did a methane-to-benzene ratio. Using a water sample from 13 years earlier, Montgomery estimated that the amount of benzene in and around the Pollocks' home when Tracy was pregnant with Sarah was 146 parts per billion. He also agreed that data from the well 30 feet from the Pollocks' backyard was a sufficient monitoring point for the area.

The record also reflects that Tracy Pollock was exposed to benzene in her home while she was pregnant. Tracy testified that she continually smelled odors in her downstairs bathroom and kitchen, and that, at some point, the odor was so strong

in her downstairs bathroom that she had to close the door so it didn't escape into the rest of the home. Kraft testified that he believed those odors to be landfill gas and that this gas was of the same concentration and had the same chemical makeup as the gas that was measured near the Pollock's home. In other words, according to Kraft, the landfill gas escaping into the Pollocks' home contained 40 to 160 parts per billion or higher of benzene.

The record also reflects that the level of benzene to which Tracy was exposed was harmful. Dr. Patel, a pediatric hematologist and oncologist and Sarah's doctor, testified that exposure to benzene at the range of 146 to 160 parts per billion can cause acute lymphocytic leukemia.

Dr. Patel also testified that, in his opinion, exposure to benzene caused Sarah's leukemia. At the time Sarah was diagnosed with acute lymphocytic leukemia, her chromosomes were abnormal. She had trisomies, or extra chromosomes, as well as chromosomes in which part of the chromosome was not present or had translocated to another chromosome. According to Dr. Patel, this pattern of trisomies indicates that Sarah's leukemia was caused by significant exposure to benzene through her mother during pregnancy and the first eight weeks of pregnancy. If Sarah's leukemia were caused by a non-exposure factor, he testified, Sarah wouldn't have had the particular type of chromosomal marking that she had.

Because there is legally sufficient evidence showing that benzene from the landfill caused Sarah's leukemia, we overrule this issue on appeal.

■ Second, the City argues that there is legally insufficient evidence of causation because the evidence does not meet the *Havner* requirement of "more than a doubling of the risk" for "scientifically reliable epidemiological studies." *See Merrell Dow*

*Pharms., Inc. v. Havner*, 953 S.W.2d 706, 718 (Tex.1997).

■ The City failed, however, to preserve this argument for appeal. Texas law provides:

To preserve a complaint that scientific evidence is unreliable and thus, no evidence, a party must object to the evidence before trial or when the evidence is offered. Without requiring a timely objection to the reliability of the scientific evidence, the offering party is not given an opportunity to cure any defect that may exist, and will be subject to trial and appeal by ambush.

Reviewing courts may not exclude expert scientific evidence after trial to render a judgment against the offering party because that party relied on the fact that the evidence was admitted. To hold otherwise is simply "unfair." As the [Murrelet v.] *Babbitt* [83 F.3d 1060, 1067, (1996)] court explained: [P]ermitting [a party] to challenge on appeal the reliability of [the opposing party's] scientific evidence under *Daubert*, [v. Merrell Dow Pharm., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)]in the guise of an insufficiency-of-the-evidence argument, would give [appellant] an unfair advantage. [Appellant] would be 'free to gamble on a favorable judgment before the trial court, knowing that [it could] seek reversal on appeal [despite its] failure to [object at trial].' Thus, to prevent trial or appeal by ambush, we hold that the complaining party must object to the reliability of scientific evidence before trial or when the evidence is offered.

*Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409–10 (Tex.1998) (citations omitted).

Despite this authority, the City insists that it *can* bring such a complaint on appeal regardless of whether an objection

was made before or during trial because such a complaint is a *legal sufficiency issue.* *See Havner*, 953 S.W.2d at 712 ("If for some reason such testimony were admitted in a trial without objection, would a reviewing court be obliged to accept it as some evidence? The answer is no."); *see also id.* at 714 ("Under that circumstance [where a flaw in the expert's reasoning from the data may render reliance on a study unreasonable and render the inferences drawn therefrom dubious], the expert's scientific testimony is unreliable and, legally, no evidence."). As quoted above, however, the Texas Supreme Court has explicitly rejected this argument. *See Ellis*, 971 S.W.2d at 409–10.[2] Accordingly, we hold the City waived its reliability argument by failing to complain at trial. Because we hold that the City waived its reliability argument, we need not address the City's complaint that the Pollocks' scientific evidence is unreliable.

■ Third, the City argues that recovery is barred because there is no jury finding of causation. Here, however, the City failed to object to the omission of this element from the jury charge. When a party fails to object to the omission of an element from the jury charge, the appellate court will deem a finding in support of the judgment if some evidence supports the finding. *Ramos v. Frito–Lay, Inc.*, 784 S.W.2d 667, 668 (Tex.1990); *see also* Tex.R. Civ. P. 279. Here, as discussed above, there is some evidence of causation. Accordingly, we overrule this issue on appeal.

## NEGLIGENCE

The City makes three arguments with respect to negligence. First, the City argues that the Pollocks cannot recover on their negligence claim because the evidence supports submission of a premises defect claim only. Second, the City contends that the Pollocks' negligence claim falls outside the TTCA's limited waiver of immunity because the Pollocks "failed to show that Sarah's injuries were caused by the condition or use of tangible personal property." Third, the City argues that the Pollocks' damages under the TTCA are limited to $250,000. Here, however, the Pollocks elected to recover under nuisance, not negligence. Because we are affirming that portion of the judgment awarding the Pollocks actual damages for nuisance, we need not address the arguments regarding negligence.

## EXEMPLARY DAMAGES

■ The jury awarded the Pollocks $10 million in exemplary damages. On appeal, the City argues that the Pollocks are barred from recovering exemplary damages because (1) the TTCA retains sovereign immunity for exemplary damages in section 101.024; (2) there is no waiver of sovereign immunity for exemplary damages under article I, section 17; (3) the common law will not support recovery of exemplary damages under *City of Gladewater v. Pike;* and (4) there is legally insufficient evidence of malice.

2. *But see Ellis*, 971 S.W.2d at 417–18 (Hecht, J., dissenting) ("As early as 1912, and as recently as last year, this Court has held that a party may complain after verdict and on appeal that evidence admitted without objection is neither legally nor factually sufficient to support the verdict. The Court ignores a solid line of cases establishing this principle with respect to all kinds of evidence, including scientific testimony.... Even if evidence is admitted without objection, it may be insufficient to support a judgment. This Court held eighty-six years ago that 'incompetent testimony can never form the basis of a finding of facts in an appellate court, notwithstanding its presence in the record without objection.' ") (citations omitted).

First, the City argues that section 101.024 of the TTCA retains sovereign immunity for exemplary damages. As discussed above, however, the trial court awarded damages to the Pollocks on nuisance, not negligence. Accordingly, the TTCA does not apply.

 The City next argues that the Pollocks are barred from recovering exemplary damages because there is no waiver of sovereign immunity for exemplary damages under article I, section 17, of the Texas Constitution. Texas law provides:

> The term "adequate compensation" does not encompass exemplary damages since such damages are punitive in nature and have nothing to do with compensating a party for his losses. There is no statutory authority for exemplary damages in cases brought for damage to property under Article 1, sec. 17. Appellees have cited no Texas cases, and we have found none, in which exemplary damages have been allowed to stand against a city in a situation where private property was damaged or taken for public use.... We hold that as a matter of law, a property owner is not entitled to recover exemplary damages in an inverse condemnation case brought under Article 1, sec. 17 of the Texas Constitution for the taking or damaging of property for public use.

*City of Odessa v. Bell,* 787 S.W.2d 525, 528–29 (Tex.App.-El Paso 1990, writ denied).

The Pollocks respond that they are entitled to exemplary damages under the authority of *City of Gladewater v. Pike,* 727 S.W.2d 514 (Tex.1987) and *City of San Antonio v. Rodriguez,* 856 S.W.2d 552 (Tex.App.-San Antonio 1993, writ denied). *See Pike,* 727 S.W.2d at 524 ("[I]f the proper facts exist, a jury should be able to consider awarding punitive damages against a municipality."); *Rodriguez,* 856

S.W.2d at 560 (upholding an award of exemplary damages against a municipality where a jury found "intentional, willful, wanton, or grossly negligent acts so as to indicate maliciousness or evil intent"). Both *Pike* and *Rodriguez,* however, included negligence actions brought under a prior version of the TTCA. As the *Bell* court explains:

> [*Pike*] merely held that in a case of negligent performance of a proprietary function, which at that time was not covered by the Tort Claims Act, exemplary damages could be awarded under certain very egregious circumstances. As suggested above, with the repeal of Section 101.058, it is doubtful that the holding in *Pike* as it might apply to the possibility of exemplary damages in negligence cases is still valid.

*Bell,* 787 S.W.2d at 528. Thus, neither *Pike* nor *Rodriguez* provides authority for upholding an award of exemplary damages against a municipality for a constitutional takings claim.

 We follow the El Paso court in *Bell* and hold that a property owner is not entitled to recover exemplary damages in an inverse condemnation case brought under article I, section 17, of the Texas Constitution. *Id.* at 528–29. Accordingly, we reverse that portion of the trial court's judgment awarding exemplary damages and render judgment that the Pollocks take nothing with respect to exemplary damages.

## REMAINING ISSUES

Finally, the City argues that even if *Pike* applies, the Pollocks cannot recover because they do not have a finding of "intentional, willful, or grossly negligent conduct which shows an entire want of care." *See Pike,* 727 S.W.2d at 522. Additionally, the City argues that there is

legally insufficient evidence of malice. Alternatively, the City argues that the Pollocks' award of exemplary damages should be reduced because: (1) exemplary damages are capped under section 41.008(b) of the Texas Civil Practices and Remedies Code; and (2) the award is excessive under the due process clause of the Fourteenth Amendment. Because we hold that the Pollocks are not entitled to exemplary damages for a nuisance claim under article I, section 17, we need not address these issues.

## Conclusion

We reverse that portion of the trial court's judgment awarding exemplary damages and render judgment that the Pollocks take nothing with respect to exemplary damages. We affirm the remainder of the judgment.