**KARNES CITY, Texas, Appellant,**

v.

**Alger H. KENDALL, Jr., and Wife,
Royaline N. Kendall,
Appellees.**

No. 04–04–00308–CV.

Court of Appeals of Texas,
San Antonio.

May 4, 2005.

Rehearing Overruled May 23 and
June 14, 2005.

Charles S. Frigerio, Hector X. Saenz,
Law Office of Charles S. Frigerio, P.C.,
San Antonio, for appellant.

Ricky J. Poole, Law Office of Ricky J.
Poole, San Antonio, for appellees.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

Karnes City appeals from a final judgment rendered against it in a suit for damages brought by Alger and Royaline Kendall. Because we conclude that liability on a public nuisance claim brought under the Texas Constitution requires a finding of intentional conduct, we reverse the judgment of the trial court and render a take nothing judgment on the Kendalls' claims against Karnes City.

### BACKGROUND

Alger and Royaline Kendall purchased a residence and approximately six acres of land from William and Doris White in 1996. After purchasing the property and moving into the home, the Kendalls learned that Karnes City claimed to have a sewer line easement across the property. The sewer line had been in place since 1962, but had never been properly recorded, and the Kendalls maintained it was not disclosed to them by the Whites prior to their purchase of the property.[1]

Shortly after moving onto the property, the Kendalls began experiencing problems with the sewer line. They claimed that on several occasions the man-hole located on their property overflowed during periods of heavy rain, causing raw sewage to be discharged onto their property. In 1997, the Kendalls contacted the Texas Natural Resources Conservation Committee, the state agency charged with oversight of waste water issues, and voiced complaints about the situation. Mr. Kendall also claims to have notified the City about the overflow problem as early as 1997.

The Kendalls initially filed suit against the Whites, alleging fraud and misrepresentation regarding the sale of the property. The Kendalls then filed a separate suit[2] against Karnes City in January 2000, alleging that the City's placement of the sewer line across their property without a recorded easement constituted an unconstitutional taking of their private property for public use in violation of article I, § 17 of the Texas Constitution. The Kendalls also alleged that the periodic overflows from the sewer line constituted a public nuisance, reducing the value and their enjoyment of the property. Karnes City initially filed only a general denial in response to the Kendalls' claims. Then, in May 2003, the City filed a traditional and no-evidence summary judgment motion denying the Kendalls' claims of nuisance and unconstitutional taking, and raising the affirmative defenses of governmental immunity, no waiver of immunity, discretionary powers defense, failure to provide notice of claims, and statute of limitations bar. The trial judge denied the City's motion for summary judgment.

The Kendalls subsequently settled their suit against the Whites. Their suit against Karnes City proceeded to jury trial in October 2003. After three days of trial, the case was submitted to the jury on special issues. With respect to the takings claim, the jury was asked whether Karnes City held an easement by prescription. The jury answered "No," and found that

1. The Kendalls had previously rented the home for approximately 11 months in 1985–86. Although the Kendalls were aware at the time of their purchase that the home had sewer service, they deny being aware that the sewer line bisected their property—a condition which prevented certain use of the land.

2. Both suits were later consolidated.

the Kendalls were entitled to no damages for the presence of the sewer line across their property. The nuisance claim was submitted to the jury on two alternative theories. The jury was asked whether the operation of the sewer line by the City created an "intentional nuisance" on the Kendall's property (Question No. 2), and, alternatively, whether the operation of the sewer line by the City created a "grossly negligent nuisance" on the Kendall's property (Question No. 3). The jury answered "No" as to an "intentional nuisance," but "Yes" as to a "grossly negligent nuisance." The jury awarded the Kendalls $50,000 in damages for the reduction in the reasonable market value of their property and $25,000 for past and future discomfort and annoyance in the use and enjoyment of their property. Based on these jury findings, the trial court entered judgment against the City and awarded the Kendalls $101,530.05 in total damages and pre-judgment interest. This appeal followed.

## DISCUSSION

On appeal, Karnes City seeks reversal of the trial court's judgment. Essentially, the City contends that the jury's finding that it created a "grossly negligent nuisance" on the Kendall's property does not

constitute a finding of the intentional conduct required to recover for a nuisance claim under Article I, § 17 of the Texas Constitution.[3] In response, the Kendalls urge us to affirm the judgment arguing that any "non-negligent" conduct, including a finding of gross negligence, will support liability against a governmental entity based on intentional conduct. Because we conclude that governmental liability on a nuisance claim under the Texas Constitution requires a finding of intentional conduct, and may not be based on a finding of gross negligence, we reverse and render a take nothing judgment in favor of the City.

### Standard of Review

We review a takings claim[4] under the Texas Constitution using a bifurcated standard of review. Whether particular facts are sufficient to establish a takings claim presents a question of law that we review *de novo*, while deferring to the jury's resolution of the underlying disputed facts. *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 552 (Tex.2004).

### Nuisance Claims Under the Texas Constitution

■ To recover on a nuisance claim against a governmental entity when the sole waiver of governmental immunity

---

3. Karnes City raises two issues on appeal: (1) whether the trial court erred in denying Karnes City's motion for summary judgment; and (2) whether the trial court erred in denying Karnes City's motion for judgment notwithstanding the verdict, or, in the alternative, motion for new trial. The grounds asserted by the City as a basis for disregarding the jury's findings include, among others, that there is no recognized cause of action for "grossly negligent nuisance" in Texas. The City also argued in its motion for judgment n.o.v., and contends on appeal, that the gross negligence question should not have been submitted to the jury because the Kendalls never pled a claim for negligence. *See* TEX.R. CIV. P. 278; *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 663 (Tex.1999). However, the record before us does not es-

tablish that the City made a specific objection to the jury question on grossly negligent nuisance prior to the charge being read to the jury; therefore, the City has waived any objection to the charge itself. TEX.R. CIV. P. 274, 278; TEX.R.APP. P. 33.1.

4. The Supreme Court noted in *City of Dallas v. Jennings*, that the term "taking" is used as shorthand to refer to all three distinct claims for the "taking," "damaging," and "destruction" of property for public use that may arise under Article I, § 17, of the Texas Constitution. *City of Dallas v. Jennings*, 142 S.W.3d 310, 313 n. 2 (Tex.2004). We similarly use the phrase "takings claim" to refer to the Kendalls' nuisance claim.

arises under Article I, § 17 of the Texas Constitution, a claimant must establish that the nuisance rises to the level of a constitutional taking. *City of Dallas v. Jennings*, 142 S.W.3d 310, 316 (Tex.2004) (nuisance liability arises only when governmental immunity is clearly and unambiguously waived by statute, or when the governmental entity manifests the requisite intent to be held liable for a constitutional taking). In *Jennings*, as in this case, the homeowners brought two claims, unconstitutional taking and nuisance, against the City of Dallas for damage to their property that resulted from the City's efforts to unclog a sewer line. *Id.* at 311. In affirming the trial court's grant of summary judgment in favor of the City, the Supreme Court determined that the City was not liable because there was no evidence the City "possessed the knowledge required to establish an intentional taking," and without the "requisite intent to be held liable under Article I, Section 17 of the Texas Constitution," the City would also be immune from the homeowner's nuisance claim. *Id.* at 315–316.

In reaching its decision, the Supreme Court focused on the type of "intent" necessary to establish a takings claim under the Texas Constitution. *Id.* at 313–314. The Court rejected the homeowner's argument that "any" intentional act can give rise to liability because "[w]hen damage is merely the accidental result of the government's act, there is no public benefit and the property cannot be said to be 'taken or damaged *for public use.*'" *Id.* (emphasis in original). The Court also rejected the City's contention that it must necessarily intend to damage the property, stating, "if the government knows that the specific damage is substantially certain to result

from its conduct, then takings liability may arise even when the government did not particularly desire the property to be damaged." *Id.*

■ Ultimately, the Court set forth a standard in *Jennings* that comports with the definition of "intent" found in the Restatement of Torts. *See* RESTATEMENT (SECOND) OF TORTS § 8A (1965). The Court held that a governmental entity may be liable for an unconstitutional taking when it "(1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property damage is substantially certain to result from an authorized government action—that is, that the damage is 'necessarily an incident to, or necessarily a consequential result of' the government's action." *Jennings*, 142 S.W.3d at 314. The Court held that there was no evidence in *Jennings* that the City knew, when it undertook to unclog the sewer line, that its actions would cause damage or that damage was substantially certain to result. *Id.* at 315. The Court held that without the requisite knowledge, the affirmative action taken by the City was insufficient to establish an intentional taking, and, therefore, insufficient to supply the requisite intent for a nuisance claim under the Texas Constitution. *Id.*

■ In their brief on appeal, the Kendalls contend the charge properly instructed the jury that they could make an affirmative finding on the nuisance claim by finding the City engaged in "non-negligent conduct" based on either intentional (Question No. 2) or grossly negligent (Question No. 3) conduct.[5] The Kendalls cite several court of appeals cases decided before *Jennings* that define a public nuisance as the "non-negligent" performance of a govern-

---

**5.** We note that the present suit was tried before the *Jennings* case had been decided by the Supreme Court.

mental function. "Non-negligence" in this context is defined as "beyond negligence, as in gross negligence or an intentional act." *See, e.g., Tarrant County v. English,* 989 S.W.2d 368, 374 (Tex.App.-Fort Worth 1998, pet. denied). The Kendalls further argue that even though the jury found no intentional conduct in response to Question No. 2, a finding of any non-negligent conduct by the City, including grossly negligent conduct, will support their public nuisance claim. We disagree.

■ Nuisance liability of a governmental entity arises only when governmental immunity is clearly and unambiguously waived by statute, or when the nuisance rises to the level of a constitutional taking. *Jennings,* 142 S.W.3d at 316; *see* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997); *City of La Porte v. Barfield,* 898 S.W.2d 288, 291 (Tex.1995); *City of Abilene v. Downs,* 367 S.W.2d 153, 159 (Tex. 1963). The Kendalls pled their claims only under the Texas Constitution and state repeatedly in the record that they are not claiming any other waiver of immunity such as through the Texas Tort Claims Act. Accordingly, it was the Kendalls' burden to establish that the City physically damaged their private property with the intent necessary to establish a constitutional taking under the *Jennings'* standard. *Jennings,* 142 S.W.3d at 316. The jury found no intentional conduct by Karnes City in response to Question No. 2.[6] Therefore, we must determine whether the only affirmative jury finding that exists, that of "grossly negligent nuisance," supplies the requisite intent under *Jennings.*

■ Question No. 3 asked the jury the following:

Does the operation of the sewer line by KARNES CITY create a grossly negligent nuisance on the KENDALLS' property for which the KENDALLS are entitled to compensation from KARNES CITY?

To constitute a **nuisance,** the condition must substantially interfere with a person's use and enjoyment of land by causing unreasonable discomfort or annoyance to the user's ordinary sensibilities. "Gross Negligence" means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to establish that the act or omission in question was the result of actual conscious indifference to the rights, welfare, or safety of the persons affected by it.

We conclude that the jury's finding of gross negligence does not meet the requirements of *Jennings* for several reasons. First, the jury's affirmative response to the above quoted question on "grossly negligent nuisance" establishes, at most, that the City acted with conscious indifference. Acting with "conscious indifference" to a known risk is not equivalent to acting with the intent or desire to cause identifiable harm or with the knowledge that harm is substantially certain to result. *Id.* at 314 (citing RESTATEMENT (SECOND) OF TORTS § 8A (1965)).

In addition, it seems clear that based on the language and reasoning of *Jennings,* our Supreme Court meant to limit governmental liability for a constitutional taking to intentional conduct. *See Jennings,* 142 S.W.3d at 314–15; *see also* RESTATEMENT (SECOND) OF TORTS § 500 cmt. f. (1965). In fact, the Supreme Court pointed out in the *Gragg* case, a case decided the same day

---

**6.** "Intentional" was defined in the charge as follows:

> One acts intentionally, or with intent, with respect to the nature of one's conduct or to

a result of one's conduct when it is one's conscious objective or desire to engage in the conduct or cause the result.

as *Jennings*, that the cases involving compensable takings claims reflect the Court's concern about the need to establish a line between mere negligence and an unconstitutional taking. *Gragg*, 151 S.W.3d at 554. The Court noted that its objective has been to "avoid what would be an anomalous result if the State, an entity otherwise generally entitled to immunity for negligence, were subject to liability for *something less than intentional behavior.*" *Id.* (emphasis added).

Furthermore, both the Restatement and well-respected commentators characterize grossly negligent conduct as something less than intentional conduct. The Restatement, for example, makes a distinction between the concepts of negligence, recklessness, and intent based on the degree of risk associated with one's conduct. Negligence is defined to include conduct which falls below a standard of care established to protect others against the unreasonable risk of harm. RESTATEMENT (SECOND) OF TORTS § 282 (1965). Recklessness, the concept most closely resembling "gross negligence," [7] includes the intentional failure to do an act that it is one's duty to do, knowing that the resulting risk to others is greater than the risk associated with mere negligent conduct. *See* RESTATEMENT (SECOND) OF TORTS § 500 (1965). Intent, on the other hand, means "that the actor desires to cause [the] consequences of his act" or "believes that the consequences are *substantially certain* to result" from the act. RESTATEMENT (SECOND) OF TORTS § 8A (1965) (emphasis added). Gross negligence is considered by most courts to fall short of recklessness, and to differ from ordinary negligence only in degree. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON

ON THE LAW OF TORTS 212 (W. Page Keeton ed., 5th ed.1984).

Finally, we acknowledge that this court has previously relied on language from other courts of appeals cases involving inverse condemnation claims which state that "non-negligence means beyond negligence, as in gross negligence or an intentional act." *See, e.g., City of San Antonio v. Pollock*, 155 S.W.3d 322, 327 (Tex.App.-San Antonio 2004, pet. filed) (quoting *Tarrant County v. English*, 989 S.W.2d 368, 374 (Tex.App.-Fort Worth 1998, pet. denied)). Quoting that language in *Pollock*, this court held that evidence that the City intentionally failed to test for benzene gas from a landfill, despite its awareness that benzene was a suspected carcinogen and was present, was sufficient to support the Pollocks' claim of an intentional taking under the Texas Constitution. *See id.* at 327–28. We believe the present case is distinguishable from *Pollock* because here the jury found no intentional conduct by Karnes City; rather, the jury found only grossly negligent conduct, which we consider to be less than the intentional conduct required to establish a constitutional taking.

For the foregoing reasons, we hold that a finding of gross negligence does not supply the requisite intent to sustain liability of a governmental entity for a constitutional takings claim. Accordingly, we reverse the judgment of the trial court and render a take nothing judgment on the Kendalls' claims against Karnes City.

---

7. Gross negligence is not defined in the Restatement (Second) of Torts. The commentators Prosser and Keeton note that gross negligence has been described by courts as, "a failure to exercise even that care which a careless person would use," and as requiring

"willful, wanton, or reckless misconduct, or such utter lack of all care as will be evidence thereof." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS 212 (W. Page Keeton ed., 5th ed.1984).