NUMBER 13-06-00307-CR


 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

NORBERTO MANZANARES, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 103rd District Court


of Cameron County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Benavides


Memorandum Opinion by Chief Justice Valdez
 

 A jury found appellant, Norberto Manzanares, guilty of murder. See Tex. Penal
Code Ann. § 19.02 (Vernon 2003). The trial court assessed punishment at thirty-five years
in prison. Appellant asserts six issues on appeal. We affirm. 

I. Background 

 On the morning of January 31, 2005, appellant crossed into Matamoros, Mexico
from Brownsville, Texas, with his wife, Gloria Manzanares, in his vehicle. The record
shows that appellant arrived at a clinic located in Matamoros at approximately 8:15 a.m. 
Upon his arrival, appellant frantically sought medical assistance for Gloria, who was
unconscious and not breathing. Gloria was immediately examined by two medical doctors,
and although life-saving measures were implemented, they proved futile; Gloria was
declared dead upon arrival. Dr. Guillermo Lozano testified that in his medical opinion, he
believed that Gloria had been dead for three or four hours. An autopsy to determine
Gloria's cause of death commenced at 10:30 a.m.

 Dr. Marco Tulio Maldonado, a forensic medical examiner for the State of Tamulipas,
Mexico, performed the autopsy. At trial, Dr. Maldonado first gave detailed testimony about
lividity (1) and rigor mortis (2) in order to determine the approximate time of death. He testified
that because Gloria showed significant signs of both lividity and rigor mortis, he believed
that Gloria must have been dead for at least six or eight hours. Dr. Maldonado also noted
various injuries to Gloria's head, scalp, and neck, and concluded the cause of death was
anoxemia due to strangulation. 

 Dr. Norma Jean Farley, a forensic pathologist, performed a second autopsy on
February 1, 2005. Dr. Farley also concluded, based on her observations of various injuries
on Gloria's head, scalp, and neck, that the cause of death was asphyxia from ligature
strangulation. Dr Farley further stated, that based on the initial autopsy done in Mexico,
the autopsy that she performed, and various photographs that she reviewed, she believed
that Gloria had been dead for approximately six to eight hours at the time Dr. Maldonado
began his initial autopsy. 

 The record shows that authorities from Matamoros and Brownsville worked together
while investigating Gloria's death. The results of their investigative efforts indicated that
Gloria was strangled with a cord in the early morning hours of January 31, 2005 while at
her home located in Brownsville. Appellant was indicted on June 15, 2005. The indictment
alleged that "in the County of Cameron and the State of Texas, [appellant] did then and
there intentionally or knowingly cause the death of [Gloria Manzanares], by asphyxia due
to ligature strangulation with a cord, rope, or object unknown to the Grand Jury." A jury
found appellant guilty of Gloria's murder on February 21, 2006. This appeal ensued. 

II. Confrontation Clause 

 By his first issue, appellant contends that his right to confrontation under the Sixth
Amendment to the United States Constitution was violated when the trial court ruled at a
pre-trial hearing that a local newspaper reporter did not have to take the witness stand and
testify about the sources he used in developing articles on appellant's case. See U.S.
Const. Amend. VI. Apparently, appellant sought to support his motion to change venue
with testimony from the reporter that the State was actively promoting publicity in its case
against appellant. The Confrontation Clause of the Sixth Amendment guarantees that "in
all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the
witnesses against him." Id. Clearly, the reporter is not a witness against appellant, nor
does he contend as much on appeal. As such, appellant was not denied his right to
confrontation or his right of cross-examination. See Dedeesma v. State, 806 S.W.2d 928,
933 (Tex. App.-Corpus Christi 1991, pet. ref'd) (citing Drew v. State, 743 S.W.2d 207, 225
(Tex. Crim. App. 1987)). Appellant's first issue is overruled. 

III. Motion to Change Venue 

 By his second issue, appellant contends the trial court abused its discretion in
denying his motion for change of venue due to pretrial publicity. 

 A change of venue is warranted because of pretrial publicity if "the publicity about
the case was pervasive, prejudicial and inflammatory." Salazar v. State, 38 S.W.3d 141,
150 (Tex. Crim. App. 2001); accord LaBonte v. State, 99 S.W.3d 801, 805 (Tex.
App.-Beaumont 2003, pet. ref'd). The two primary means of discerning whether publicity
is pervasive are a hearing on a motion to change venue and the voir dire process. 
Gonzalez v. State, 222 S.W.3d 446, 449 (Tex. Crim. App. 2007). If the accused raises
"substantial doubts about obtaining an impartial jury" because of "widespread inflammatory
news coverage," the constitutional right to fair trial is implicated. Phillips v. State, 701
S.W.2d 875, 879 (Tex. Crim. App. 1985) (citing Bell v. State, 582 S.W.2d 800, 810-11
(Tex. Crim. App. 1979)). 

 The standard of review on appeal from a trial court's ruling on a motion for change
of venue is abuse of discretion. Gonzalez, 222 S.W.3d at 449. If the trial court's ruling
falls within the zone of reasonable disagreement, it will be upheld. See id.; see also
Narvaiz v. State, 840 S.W.2d 415, 428 (Tex. Crim. App. 1992). 

 A hearing on appellant's motion for change of venue was held on October 6, 2005. 
At the hearing, appellant introduced into evidence fifteen newspaper articles that were
published over a nine-month period (February 2005 to October 2005). An affidavit
provided by Irma Rubio, an employee of the Brownsville Herald, indicated that at the time
the fifteen articles were circulated, the average daily circulation of the Brownsville Herald
was 16,368, with an estimated readership of 49,000. Rubio concluded that "because of
the number of articles and the said circulation, the said matter received substantial (local)
coverage." 

 Appellant also presented the opinions of two witnesses on the amount of publicity
that the case had generated. The first, Amelia Mendez, a teacher with the Brownsville
Independent School District, testified that she read only two of the fifteen articles printed
by the Brownsville Herald. She further testified that she discussed appellant's case with
approximately twenty of her co-workers. Mendez acknowledged, however, that no co-worker ever expressed an opinion as to whether appellant was able to get a fair trial. 

 The second of appellant's witnesses was Maria Luis Gomez, a social security
administration employee and a fifty-three-year resident of Brownsville. Gomez testified she
became familiar with appellant's case by watching the news and reading every newspaper
article that involved appellant's case. She claimed also to have conversed with
approximately twenty-five of her co-workers about the case and that several of them
mentioned that they believed appellant was guilty. 

 With regard to the voir dire process, appellant claims that the trial court's recognition
that "a good majority" of the potential jurors had heard or read about the case through
different media outlets demonstrated the extent to which pretrial publicity had permeated
the community. Although the record does not show the exact number of potential jurors
that indicated having had heard or read about appellant's case, the record does show that
only three, out of a pool of eighty potential jurors, had formed an opinion about the case
that they would not be able to set aside. 

 We acknowledge the fact that there was extensive media coverage of this case. 
However, publicity in the news alone will not support a change of venue. Willingham v.
State, 897 S.W.2d 351, 357 (Tex. Crim. App. 1995). Appellant's witnesses identified a
very limited number of citizens who reportedly became aware of appellant's case through
the media. Indeed, Mendez testified that she had read only two of the fifteen articles that
had been published. Moreover, the fact that only three out of eighty potential jurors
expressed the opinion that they could not be fair and impartial jurors does not establish
that the pretrial publicity permeated the community to such an extent that the decision to
deny the motion for a change of venue was outside the zone of reasonable disagreement. (3) 

 There is simply nothing in the record to indicate that the trial court failed to consider
all of the testimony and physical evidence tendered by appellant at the change of venue
hearing. See Gonzalez, 222 S.W.3d at 450. The trial court was also permitted to consider
the entirety of the responses heard during the voir dire process. Id. We find no abuse of
discretion by the trial court in denying appellant's motion for change of venue. Appellant
has failed to carry his burden of proving the existence of identifiable and pervasive
prejudice within the Cameron County community such that the likelihood of obtaining a fair
and impartial jury was doubtful. Issue two is overruled. 

IV. Expert Qualifications

 By his third issue, appellant asserts that the trial court abused its discretion by
permitting Dr. Mario Maldonado to testify as a medical expert regarding the victim's time
of death. 

 We review the trial court's admission of expert testimony for an abuse of discretion. 
Carrasco v. State, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); Kelly v. State, 824 S.W.2d
568, 574 (Tex. Crim. App. 1992). Absent a clear abuse of discretion, the trial court's
decision to admit or exclude testimony will not be disturbed. Wyatt v. State, 23 S.W.3d 18,
28 (Tex. Crim. App. 2000); Penry v. State, 903 S.W.2d 715, 762 (Tex. Crim. App. 1995). 
 The test for admitting expert testimony is set forth in rule 702:

 If scientific, technical, or other specialized knowledge will assist the trier of
fact to understand the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill, experience, training, or education
may testify thereto in the form of an opinion or otherwise. 


Tex. R. Evid. 702. The party proffering the expert witness bears the burden of showing that
the witness is qualified on the specific matter in question. Wyatt, 23 S.W.3d at 28; Penry,
903 S.W.2d at 762. No rigid formula exists for determining whether a particular witness
is qualified to testify as an expert. Matson v. State, 819 S.W.2d 839, 851-52 n.10 (Tex.
Crim. App. 1991). The special knowledge qualifying a particular witness as an expert may
be gleaned entirely from studying technical works, obtaining a specialized education,
practical experience, or a combination of the three. Holloway v. State, 613 S.W.2d 497,
501 (Tex. Crim. App. 1981); see also Carter v. State, 5 S.W.3d 316, 319-20 (Tex.
App.-Houston [14th Dist.] 1999, pet. ref'd) (stating that an expert witness may be qualified
solely on the basis of practical experience). 

 The record shows that Dr. Maldonaldo received his medical degree from the
University of Matamoros in 1985. He has been practicing medicine for over twenty years,
is a certified coroner, a licensed forensic medical examiner, and, at the time of trial, had
been employed by the Attorney General's Office for the State of Tamaulipas, Mexico for
approximately twelve years. Dr. Maldonado testified that during his twelve years with the
Attorney General's Office, he performed over 1,400 autopsies, was trained in determining
time of death, and also received a degree in criminology. Additionally, he testified that he
is subject to re-certification every five years, and is considered an expert in the State of
Tamaulipas. 

 Given Dr. Maldonado's training and experience, we find the trial court did not abuse
its discretion in allowing Dr. Maldonaldo to testify as an expert witness. See Hernandez
v. State, 53 S.W.3d 742, 751 (Tex. App.-Houston [1st Dist.] 2001, pet. ref'd) (stating that
experience alone may provide a sufficient basis for expert's testimony); Hardin v. State, 20
S.W.3d 84, 92 (Tex. App.-Texarkana 2000, pet. ref'd) (same). Appellant's third issue is
overruled. 

V. Reliability 


 By his fourth and fifth issues, appellant contends that the trial court failed to perform
its gate-keeping function by allowing Dr. Maldonaldo to testify on the victim's time of death
without first requiring the State to meet its burden under Kelly v. State, 824 S.W.2d 568,
572 (Tex. Crim. App. 1992) (requiring trial court to hold a hearing outside the presence of
the jury to determine whether scientific evidence meets a three-prong test for reliability). 


 At trial, appellant objected to Dr. Maldonado's testimony on the ground that the
State had not proven that Dr. Maldonado was qualified to provide an expert opinion as to
the victim's time of death. Appellant did not object on the basis that the State had failed
to hold a hearing regarding whether Dr. Maldonado's testimony was based on reliable
information. (4) To preserve an issue on appeal, there must be a timely objection that
specifically states the legal basis for the objection. Rezac v. State, 782 S.W.2d 869, 870
(Tex. Crim. App. 1990); Maldonado v. State, 902 S.W.2d 708, 711 (Tex. App.-El Paso
1995, no pet.). Appellant's complaint on appeal that the trial court failed to hold a hearing
to determine the underlying reliability of Dr. Maldonado's testimony differs from his trial
objection; therefore, we hold he forfeited this issue for review. See Tex. R. App. P. 33.1(a);
Holmes v. State, 135 S.W.3d 178, 185 (Tex. App.-Waco 2004, no pet.) (recognizing an
expert's qualifications as a separate issue under rule of evidence 702); Chisum v. State,
988 S.W.2d 244, 250-51 (Tex. App.-Texarkana 1998, pet. ref'd) (holding objection to
admission of expert's opinion did not preserve for review issue of reliability of scientific
evidence). Appellant's fourth and fifth issues are overruled. 

VI. Legal and Factual Sufficiency


 By his sixth issue, appellant contends that because Dr. Maldonado was unqualified
to provide expert testimony on the victim's time of death, or because the methods used by
Dr. Maldonado were either unreliable or improperly applied, the evidence is legally and
factually insufficient to prove territorial jurisdiction (i.e., that the homicide occurred in the
United State rather than Mexico). We have already determined that Dr. Maldonado was
qualified to testify on behalf of the State as an expert witness. We also determined that
appellant failed to object on the basis that Dr. Maldonado's method of determining time of
death was unreliable. Because we have overruled each ground on which appellant bases
his sufficiency of the evidence argument, appellant's sixth issue is also overruled. (5) 

VII. Conclusion

 

 We affirm the trial court's judgment. 


 

 ROGELIO VALDEZ

 Chief Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 29th day of July, 2008. 





 
1. "Lividity" is the postmortem pooling of the blood in the body due to gravity when the heart no longer
pumps blood.
2. "Rigor mortis" is the stiffening of the joints of the body after death.
3. The court of criminal appeals and other appellate courts have found trial courts within their
discretion when they seated panels with 69 venire members out of 109 who had seen publicity on the
accused's case, Von Byrd v. State, 569 S.W.2d 883, 890-91 (Tex. Crim. App. 1978); with 44 out of 72 had
seen publicity on the defendant's case, Russell v. State, 146 S.W.3d 705, 714 (Tex. App.-Texarkana 2004,
pet. ref'd), and with 52 panelists out of 64 had seen something on the defendant's case. Crawford v. State,
685 S.W.2d 343, 349-50 (Tex. App. Amarillo 1984), rev'd on other grounds, 696 S.W.3d 903 (Tex. Crim. App.
1985). Likewise, the court of criminal appeals has found trial courts within their discretion when they seated
juries with 15 venire members out of 77 stated that they had an opinion that could not be set aside, Gardner
v. State, 733 S.W.2d 195, 204-05 (Tex. Crim. App. 1987), and with 39 out of 112 held the same view. Taylor
v. State, 420 S.W.2d 601, 604 (Tex. Crim. App. 1967). 
4. At trial, appellant formed his objection in the following manner: "Your Honor, our objection goes that
the State has not presented sufficient facts to establish that [Dr. Maldonado] is an expert - he may be, he can
testify as to [the victim's] died [sic] from strangulation, but for him to go a step further and give an opinion as
to the time of death, he does not have the qualifications . . ." 
5. On this point, we note that at least one appellate court has embraced the idea that where, like here,
an appellant has failed to object on grounds that the methods used by an expert witness proved unreliable,
the appellant has essentially forfeited his right to appeal that same issue "in the guise of an insufficiency of
the evidence argument." See City of San Antonio v. Pollock, 155 S.W.3d 322, 331 (Tex. App.-San Antonio
2004, pet. granted). To hold otherwise "would give [the appellant] an unfair advantage. [The appellant] would
be free to gamble on a favorable judgment before the trial court, knowing that [it could] seek reversal on
appeal [despite its] failure to [object] at trial." Id. (quoting Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402,
409-10 (Tex. 1988). We recognize, however, that Pollock was decided in a civil setting, and we are unaware
of single appellate court that has extended its holding to a criminal matter. Although the State urges us to
apply Pollock to the current matter before us, because we have expressly rejected the rationale underlying
appellant's sufficiency of the evidence argument, we see no need to do so.